Warnie Lee IVY et al., Plaintiffs-Appellees, Cross-Appellants,

v.

SECURITY BARGE LINES, INC., Defendant-Appellant, Cross-Appellee.

No. 76–4130.

United States Court of Appeals,
Fifth Circuit.

Nov. 13, 1979.

Philip Mansour, Martin A. Kilpatrick, Greenville, Miss., for defendant-appellant, cross-appellee.

Joshua A. Tilton, Marvin L. Jeffers, Baton Rouge, La., for plaintiffs-appellees, cross-appellants.

Harvey J. Lewis, of Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., amicus curiae for Louisiana Trials Lawyers Assoc.

Before BROWN, Chief Judge, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE, and KRAVITCH, Circuit Judges.*

ALVIN B. RUBIN, Circuit Judge:

We gathered en banc to consider whether damages for loss of society may be recov-

---

* Judges Fay, Frank M. Johnson, Jr., Garza, Henderson, Reavley, Politz, Hatchett, Anderson, Randall, Tate and Sam D. Johnson did not participate in the consideration of or decision

ered by the survivor of a Jones Act seaman who met death in territorial waters of the United States as a result of negligence for which his employer was liable. The settled Jones Act jurisprudence denying recovery for this and other elements of nonpecuniary loss and the absence of any adequate reason to take a different tack compel us to hold to the charted course and deny recovery for this element of damages.

John Ivy, the decedent, was a member of the crew of the vessel M/V ISSAQUENA until he was lost and presumably drowned on the night of August 11, 1975 as he was attempting to aid a fellow crewman who had fallen overboard. The vessel and its tow were then a few miles above Baton Rouge, Louisiana, heading up the Mississippi River.

Decedent's father, Warnie Lee Ivy, instituted this suit under the Jones Act for negligence and the general maritime law for unseaworthiness. In answer to special interrogatories, the jury found that the vessel was not unseaworthy, and that John Ivy died as a result of the negligence of the defendant but was 50% contributorily negligent himself, and awarded each of his parents $50,000 for loss of support, services, and society. We agreed to hear the case en banc to consider only the issue of whether

this award was permissible in the light of the jury's conclusion that recovery was premised solely on the Jones Act.

In *The Osceola*, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, the Supreme Court concluded that general maritime law does not create a cause of action on behalf of a seaman for the negligence of his master or fellow crewmen. The Court held that a "seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew" beyond his maintenance and cure, although under general maritime law he may be entitled to consequential damages for unseaworthiness of the vessel. *Id.* at 175, 23 S.Ct. at 487, 47 L.Ed. at 764. Responding to the decision, Congress in 1915 enacted the Jones Act, 46 U.S.C. § 688,[1] extending to seamen the remedies made available to railroad workers under the provisions of the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.* (F.E.L.A.).[2] Congress thereby legislatively overruled *The Osceola* insofar as it denied to a seaman the right to recover damages from his employer for negligence of his co-workers. The Jones Act thus became, and has remained, the sole basis upon which a seaman or his beneficiaries may sue his employer for negligence.[3]

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier . . . .

in this case. The case was taken under submission by the court en banc on June 5, 1979.

1. The Jones Act, 46 U.S.C. § 688, provides: Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

2. The Federal Employers' Liability Act, 45 U.S.C. § 51, provides in part:

3. The Jones Act imposes liability on the owner of the vessel for injuries or death resulting from negligence whether of the owner directly, vicariously for the acts of employees who are not seamen, or vicariously for the acts of the master and members of the crew. In this case, the pleadings, pretrial order and interrogatories make it clear that the negligence on which liability was predicated arose in the navigation of the vessel. This case does not, therefore, involve the question, and we express no opin-

Neither the Jones Act nor the F.E.L.A. contains any reference to the items of damage that are recoverable in such a suit. However, in *Michigan Central Railroad v. Vreeland*, 1913, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, the Supreme Court interpreted the F.E.L.A. to permit recovery only for damages that "flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries." *Id.* at 70, 33 S.Ct. at 196, 57 L.Ed. at 421. Thus construed, the act permits recovery for loss of services of the deceased and, when the beneficiary is a child, for the loss of the care, counsel, training and education that it might have reasonably received from the parent. As interpreted by the Court, the act excludes injuries "to the affections and sentiments which arise from the death of relatives, and which, though most painful and grievous to be borne, cannot be measured or recompensed by money. It excludes, also, those losses which result from the deprivation of the society and companionship, which are equally incapable of being defined by any recognized measure of value." *Id.* at 71, 33 S.Ct. at 196, 57 L.Ed. at 422.

The Court also held that the F.E.L.A. did not embrace survivorship damages, and denied the beneficiaries recovery for the decedent's pain and suffering prior to his death.

Congress anticipated this aspect of *Vreeland* by adopting in 1910, prior to the Supreme Court decision, an amendment to the F.E.L.A., making the decedent's action survive for the benefit of the beneficiaries who would be entitled to wrongful death damages, Act of April 5, 1910, c. 143, § 2, 36 Stat. 291, now 45 U.S.C. § 59.

In the 66 years since the *Vreeland* decision, its principle that recovery under the F.E.L.A. is limited to pecuniary damages has remained a constant roadbed for railway workers suits.[4] The same principle has uniformly been adopted with respect to Jones Act death actions.[5]

Nothing in this case, or in the jurisprudence, is sufficient to plot a change in the Jones Act course. The only question that can be raised concerning it comes as a result of a trident of death cases, beginning with *Moragne v. States Marine Lines, Inc.*, 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. The Supreme Court there recognized for the first time a cause of action for wrongful death based on general maritime law. Before then death arising from unseaworthiness could be the basis of a suit under the Death on the High Seas Act, 46 U.S.C. § 761 [DOHSA], which is limited to events occurring outside the territorial waters of the United States; if the accident occurred within territorial waters, the

ion concerning whether an action for negligence might be brought against the owner under general maritime law if the fault were not with the master or a crew member, or whether the Jones Act is the sole remedy for an employee whose employer is negligent.

4. *See, e. g., Chesapeake & Ohio Ry. v. Kelly*, 1916, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; *American R. R. Co. v. Didricksen*, 1913, 227 U.S. 145, 33 S.Ct. 224, 57 L.Ed. 456; *Stark v. Chicago, North Shore & Milwaukee Ry.*, 7 Cir. 1953, 203 F.2d 786; *Mobile & Ohio R. R. v. Williams*, 1930, 221 Ala. 402, 129 So. 60; *Atlantic Coast Line R. R. v. Daugherty*, 1967, 116 Ga.App. 438, 157 S.E.2d 880; *Simmons v. Louisiana Ry. & Nav. Co.*, 1923, 153 La. 405, 96 So. 12; *Torchia v. Burlington Northern, Inc.*, Mont. 1977, 568 P.2d 558, *cert. denied*, 1978, 434 U.S. 1035, 98 S.Ct. 770, 54 L.Ed.2d 783.

5. *See, e. g., In re M/V Elaine Jones*, 5 Cir. 1973, 480 F.2d 11, 32, *reh. granted*, 513 F.2d 911, *cert. denied*, 1975, 423 U.S. 840, 96 S.Ct. 71, 46

L.Ed.2d 60; *Cities Service Oil Co. v. Launey*, 5 Cir. 1968, 403 F.2d 537; *Igneri v. Cie de Transports Oceaniques*, 2 Cir. 1963, 323 F.2d 257, *cert. denied*, 1964, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969; *Sabine Towing Co. v. Brennan*, 5 Cir. 1936, 85 F.2d 478, *cert. denied*, 299 U.S. 599, 57 S.Ct. 191, 81 L.Ed. 441; *United States v. Boykin*, 5 Cir. 1931, 49 F.2d 762; *Thompson v. Offshore Co.*, S.D.Tex.1977, 440 F.Supp. 752; *Petition of Risdal & Anderson, Inc.*, D.Mass., 1968, 291 F.Supp. 353; *Petition of Southern Steamship Co.*, D.Del.1955, 135 F.Supp. 358; *American Barge Line Co. v. Leatherman's Administratrix*, 1947, 306 Ky. 284, 206 S.W.2d 955; *Standard Products, Inc. v. Patterson*, Miss.1975, 317 So.2d 376.

In addition, we have denied damages for nonpecuniary loss when a seaman is injured and survives by refusing to permit his spouse to recover for loss of consortium. *Christofferson v. Halliburton Co.*, 5 Cir. 1976, 534 F.2d 1147.

plaintiff was forced to resort to state wrongful death statutes. These statutes were often unwieldy and not designed to accommodate maritime claims; moreover, because they varied from state to state, the representatives of similarly situated deceased seamen might be awarded widely varying sums based on the fortuity of whether the accident occurred within or without the three-mile limit and, if it were within that limit, based on the laws of the particular state where the casualty occurred. One of *Moragne's* objectives was to substitute a uniform current for these unpredictable eddies. The Court left open the issue of appropriate damages under this new cause of action, noting, "If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been implemented with success for decades." 398 U.S. at 408, 90 S.Ct. at 1792, 26 L.Ed.2d at 361.

In the wake of *Moragne*, some circuit courts concluded that the uniformity with which the Supreme Court had been concerned in that case involved uniform bases of liability rather than standard damage recoveries, and held that nonpecuniary damages could be awarded by utilizing state remedies to supplement the new *Moragne* cause of action. *See, e. g., Dennis v. Central Gulf Steamship Corp.*, 5 Cir. 1972, 453 F.2d 137, *cert. denied*, 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218; *Greene v. Vantage Steamship Corp.*, 4 Cir. 1972, 466 F.2d 159. Others concluded that the policy of uniformity embodied in *Moragne* required that the statutory and judicially-developed limitation to pecuniary damages of DOHSA and the Jones Act be extended to claims under general maritime law. *See, e. g., Simpson v. Knutsen*, 9 Cir. 1971, 444 F.2d 523; *In re United States Steel Corp.*, 6 Cir. 1970, 436 F.2d 1256, *cert. denied*, 1971, 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153.

The Supreme Court decided that nonpecuniary damages could be recovered by survivors of a longshoreman for death resulting from unseaworthiness in *Sea-Land Services, Inc. v. Gaudet*, 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9. There the decedent had, while living, recovered for injuries suffered on state waters, but later died as a result of the same event; his widow sued under *Moragne*. Although the Court refused to allow double recovery, it did hold the widow entitled to compensation for pecuniary damages, including loss of support, and services, as well as funeral expenses. The Court then turned to the nonpecuniary claim for loss of society and, noting that recovery for this intangible deprivation had been available under the majority of state wrongful death statutes prior to the decision in *Moragne*, it permitted the award. *Id.* at 587–90, 94 S.Ct. at 816–17, 39 L.Ed.2d at 22–24.

Neither *Moragne* nor *Gaudet* involved a Jones Act seaman. Each of them dealt only with an unseaworthiness claim asserted under general maritime law. Neither of them intimates even in dicta a change in the Jones Act rule. Other reasons, somewhat more complex, appear to preclude interpreting the Jones Act as being supplemented by a *Moragne*-engendered *negligence* action for damages if (but only if) death occurs in territorial waters or on land. *Moragne* did not create or even discuss an action for negligence; it dealt only with death occasioned by unseaworthiness. The suggestion that the Jones Act measure of damages can be *supplemented* by the *Moragne*-cause-of-action-*Gaudet*-damages rule will not bear analysis;[6] that hybrid could be spawned in but one context, the coupling of unseaworthiness (capable of producing *Gaudet*) with a Jones Act claim to give birth to Jones Act damages for negligence. To consider the *Moragne-Gaudet* result a supplemental remedy to the Jones Act when the suit is for negligence only is not to supplement the statute but to alter the interpretation it has continuously received.

6. *See generally* Maraist, *Maritime Wrongful Death*—Higginbotham *Reverses Trend and Creates New Questions*, 39 La.L.Rev. 81 (1978); Swaim, *Requiem for* Moragne: *The New Uniformity*, 25 Loy.L.Rev. 1 (1979). *Compare* Note, 53 Tul.L.Rev. 254, 263 (1978).

We turn then to the most recent signal from the Supreme Court, its decision in *Mobil Oil Corp. v. Higginbotham*, 1978, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581. There suit was brought by several claimants seeking recovery for the deaths of their husbands in a helicopter crash outside United States waters. One of the passengers, Shinn, was found by the district court to be a Jones Act seaman and his widow was allowed to sue under the Jones Act, DOHSA and general maritime law. Representatives of two other passengers sued under DOHSA and general maritime law. On appeal, one of these two passengers, Nations, was also found to be a Jones Act seaman, and his widow's claims were remanded to the district court for a determination of damages under the Jones Act. *Id.*, 5 Cir. en banc 1977, 545 F.2d 422, 433. All were awarded damages premised on Mobil's negligence, including an amount for loss of society.

The Supreme Court held that the case was distinguishable from *Gaudet* because of the place of the death, and refused to allow the award for loss of society to stand. Noting that Congress had specifically limited damages under DOHSA to pecuniary loss, the Court found the goal of uniformity insufficiently compelling to negate clear legislative intent: "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements."

436 U.S. at 625, 98 S.Ct. at 2015, 56 L.Ed.2d at 587. The Court also commented, "It is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant, a desire for uniformity cannot override the statute," *id.* at 624, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, but expressed the belief that the difference between a damage award including loss of society and one without it could be "primarily symbolic" and that the disuniformity created by the opinion may not have "a great practical significance." *Id.* at 624 n.20, 98 S.Ct. at 2015, 56 L.Ed.2d at 587. Thus, in *Higginbotham*, two claimants, Mrs. Shinn and Mrs. Nation whose right to recover was based only on the Jones Act because recovery was premised solely upon negligence,[7] were denied damages for loss of society. While the Jones Act issue was not discussed in the opinion, it was raised squarely by the facts, and urged on application for rehearing.

The Jones Act remedy for negligence remains unaffected by either the rules governing damages recoverable for unseaworthiness in general maritime law or by changes in those rules.[8] The Jones Act applies in equal force to the death of seamen on the high seas,[9] in domestic territorial waters,[10] in foreign territorial waters[11] and on land if suffered in the course of employment as a seaman.[12] None can doubt, following *Higginbotham*, that, if a seaman dies on the high seas, his survivors

7. We note that the negligence proved was not negligence of a master or crew member. *See* n.3, *supra*.

8. A seaman may, of course, join a claim for unseaworthiness under general maritime law with his Jones Act claim for negligence. We do not here reach the issue of whether after *Higginbotham* nonpecuniary damages may be recovered in such an action if unseaworthiness is found. Ivy recovered solely for negligence. General maritime law does not provide a cause of action for negligence to a seaman against his employer supplemental to that created by the Jones Act; *The Osceola* has never been overruled. Therefore, to the extent that *Gaudet* remains seaworthy after *Higginbotham*, it can have no impact when, as here, no general maritime law (*Moragne*-type) claim is involved.

9. *E. g., Antypas v. Cia. Maritima San Basilio, S.A.*, 2 Cir. 1976, 541 F.2d 307, *cert. denied*, 1977, 429 U.S. 1098, 97 S.Ct. 1116, 51 L.Ed.2d 545.

10. *E. g., Moragne v. States Marine Lines, Inc.*, 1970, 398 U.S. 375, 395 n.12, 90 S.Ct. 1772, 1785, 26 L.Ed.2d 339, 354.

11. *E. g., Farmer v. Standard Dredging Corp.*, D.Del.1958, 167 F.Supp. 381.

12. *E. g., O'Donnell v. Great Lakes Dredge & Dock Co.*, 1943, 318 U.S. 36, 63 S.Ct. 488, 87 L.Ed. 596; *Hopson v. Texaco, Inc.*, 1966, 383 U.S. 262, 86 S.Ct. 765, 15 L.Ed.2d 740; *Vincent v. Harvey Well Serv.*, 5 Cir. 1971, 441 F.2d 146.

can recover only pecuniary damages. To adopt the suggestion that, inferentially, the Jones Act has been amended by *Gaudet* in respect to death on domestic territorial waters would be to approve a different measure of damages under the same federal statute dependent on where death occurred. Neither logic nor the jurisprudence under the gemini Jones Act–F.E.L.A. can sustain such a result. Although many statutes state different rules to apply to different geographical areas and courts have, absent legislation, formulated rules that vary territorially in application, it would be chimerical to convert a single statute into different applications in different geographical areas after it has been applied uniformly throughout our nation and in all the foreign waters to which our ships travel for two-thirds of a century.

For these reasons, we conclude that the Jones Act is a vessel designed for special purposes; it is not certified for *Gaudet* cargo, and it does not permit the recovery in a wrongful death action of damages for loss of society of a seaman.[13]

The panel opinion, 5 Cir., 585 F.2d 732, is reinstated as to other matters discussed in it. The decision is REVERSED and the case is REMANDED FOR A NEW TRIAL.

JOHN R. BROWN, Chief Judge, with whom KRAVITCH, Circuit Judge, joins, dissenting:

Today a majority of this Court destroys the possibility of recovery in a wrongful death suit for loss of society under the Jones Act for the death of a seaman in territorial waters. In so doing, the Court drains *Moragne* and *Gaudet* of their vitality and makes much ado of *Higginbotham*'s silence. The end result is a decision contrary to all humanitarian instincts continuously reflected in the admiralty, with the possible exception of *The Harrisburg*[1] which took 85 years to scuttle.

### I.

The general maritime law was devoid of a wrongful death remedy for seamen for many years. Courts wrestled with the lack of such a remedy, recognizing the inequity and inhumanity of that void, and developed a clutter of conflicting exceptions to the rule. In an effort to correct the anomalies and confusion engendered by this lack of a wrongful death remedy, the Supreme Court handed down *Moragne v. States Marine Lines, Inc.*, 1970, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339, 1970 AMC 967, overruling its prior, restrictive and ancient decision in *The Harrisburg*, 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358. In *Moragne* the Court considered the claim of a widow of a *Sieracki*[2] seaman who was killed while working as a longshoreman aboard an ocean-going vessel on navigable waters within the state of Florida. Embracing a modern and humane approach, the Court permitted the widow her claim, recognizing a new cause

---

13. There is superficial appeal in the argument that to award damages for loss of support would be humanitarian, and the correlative implication that to deny it is callous. The same emotive semantics would characterize as parsimonious and unfeeling any denial of any sort of nonpecuniary damage; awards for grief and anguish, for loss of consortium, for loss of affection or for any other sort of emotional distress could be justified by the same appeal that sentiment should disregard history and jurisprudence.

The Jones Act not only implicitly limits the kind of damage that may be recompensed; by incorporating remedies available under the F.E.L.A., it expressly permits only certain persons to receive even redress for pecuniary losses. A dependent, widowed mother may receive nothing for the death of her sole support if her son was married; a dependent, enfeebled aunt, who was actually being supported by her nephew, may recover nothing if her compassionate relative also had a parent, even a wealthy and completely self-supporting one. *See* 45 U.S.C. § 51. If sheer compassion alone dictates a change in the scope of the Jones Act with respect to items of damage, after more than six decades of consistent interpretation, or with respect to beneficiaries, for whom an even more compelling appeal can be made, the argument for change must be addressed to Congress, as the author of the Jones Act, for it is only under the authority of that statute that the plaintiff has a right to be in court.

1. 1886, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358.

2. *Seas Shipping Co. v. Sieracki*, 1946, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 AMC 698.

of action for recovery under general maritime law.

Four years later, in *Sea-Land Services, Inc. v. Gaudet*, 1974, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9, 1973 AMC 2572, the Supreme Court delineated the measure of damages available in a *Moragne* maritime recovery. In *Gaudet*, as in *Moragne*, a widow of a *Sieracki* seaman killed while working as a longshoreman on Louisiana navigable waters, brought a wrongful death action. The Court held that certain nonpecuniary losses—including loss of society—could be recovered. Again, taking an openhanded approach, the Court recognized the propriety of compensation for certain losses of a nonpecuniary nature.

Together, *Moragne* and *Gaudet* present an expansive approach to recovery of nonpecuniary damages. They recognize the "humane and liberal character of proceedings in admiralty," *The Sea Gull*, 21 F.Cas. 909 (No. 12,578) (C.C.Md.1865), quoted in *Moragne, supra*, 398 U.S. at 387, 90 S.Ct. at 1781, 26 L.Ed.2d at 349, 1970 AMC at 977. And, repeatedly, they underscore the "special solicitude for the welfare of those men who [undertake] to venture upon hazardous and unpredictable sea voyages." *Moragne, supra*, at 387, 90 S.Ct. at 1780, 26 L.Ed.2d at 349, 1970 AMC at 977. *Gaudet, supra*, 414 U.S. at 577 and 588, 94 S.Ct. at 811 and 816, 39 L.Ed.2d at 17 and 23, 1973 AMC at 2575 and 2584.

It is in this framework that our case must be analyzed. It is true, as the en banc Court points out, that in both *Moragne* and *Gaudet* the Supreme Court was primarily concerned with general maritime law and that neither case specifically involved a Jones Act seaman. But it is not true, despite the insistence of the en banc Court, that *Moragne* and *Gaudet* can be pigeonholed wholly apart from the Jones Act.

Rather, the Supreme Court intended to apply *Moragne* and *Gaudet* to the Jones Act, encompassing damages for loss of society within the purview of a wrongful death Jones Act recovery. *Moragne's* creation of a wrongful death remedy was predicated upon a desire to bring the admiralty law in line with modern notions of tort compensation. In particular, the states had enacted wrongful death laws, while the seaman had no redress for wrongful death under general maritime law. In *Gaudet*, the Court also looked to the modern trend and to the types of losses recoverable under state law in deciding the scope of the *Moragne* recovery. It is these developments in the law, and their innate rationality, that led the Supreme Court to decide *Moragne* and *Gaudet*. These very same concerns should lead the en banc Court to apply *Moragne* and *Gaudet* to the Jones Act.

Until today, this Court has applied *Moragne* and *Gaudet* to the Jones Act, permitting the recovery of nonpecuniary damages. In *Landry v. Two R. Drilling Co.*, 5 Cir., 1975, 511 F.2d 138, 1975 AMC 2137, *rehearing denied*, 517 F.2d 675, 1975 AMC 2135, we recognized the propriety of nonpecuniary *Gaudet* damages where there is liability under both a general maritime claim for unseaworthiness and a Jones Act claim. And, in *Petition of M/V ELAINE JONES*, 5 Cir., 513 F.2d 911, 1975 AMC 2098 (on petition for rehearing), *cert. denied*, 1975, 423 U.S. 840, 96 S.Ct. 71, 46 L.Ed.2d 60, involving claims of both unseaworthiness and the Jones Act, the Court made no distinction between the two claims. The panel remanded the case to allow an award for loss of society. In remanding, the panel relied upon *Gaudet*, indicating that *Gaudet* very much applies to Jones Act claims.

This is consistent with the broad purposes of the Jones Act. In enacting the Jones Act, Congress intended "to provide liberal recovery for injured workers." *Kernan v. American Dredging Co., Inc.*, 1958, 355 U.S. 426, 432, 78 S.Ct. 394, 398, 2 L.Ed.2d 382, 388, 1958 AMC 251, 256. Seamen are deemed wards of the admiralty and the Jones Act is "liberally construed to carry out its full purpose, which was to enlarge admiralty's protections to its wards." *Garrett v. Moore-McCormack Co., Inc.*, 1942, 317 U.S. 239, 248, 63 S.Ct. 246, 252, 87 L.Ed. 239, 248, 1942 AMC 1645, 1652. Indeed, the Jones Act is not a static remedy, but one to be "developed and enlarged to meet chang-

ing conditions and changing concepts of industry's duty toward its workers." *Kernan, supra,* 355 U.S. at 432, 78 S.Ct. at 398, 2 L.Ed.2d at 388, 1958 AMC at 256.

In reaching its decision, the en banc Court relies heavily on the 1913 decision in *Michigan Central Railroad v. Vreeland,* 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417, interpreting the Federal Employers' Liability Act, 45 U.S.C.A. § 51 *et seq.* (FELA). Such reliance is misplaced. Despite the statutory tie between FELA and the Jones Act, 46 U.S.C.A. § 688, the two are not necessarily nor immutably linked. There was drift away from *Vreeland* prior to *Gaudet,* but *Gaudet* surely marked the end of the anchorage between Jones Act recoveries and *Vreeland.*

To be sure, FELA case law has often provided a persuasive starting point for analyzing Jones Act claims.[3] But in general, "The admiralty has led, not followed."[4] The seaman is thought to be subject to greater risks and inconvenience than the railroad worker. Accordingly, the Jones Act has frequently granted relief where the

FELA has not. Thus the employer's defense of assumption of risk of the shipowner's negligence was eliminated in Jones Act cases, while the FELA continued to permit this defense.[5] And in *Cox v. Roth,* 1955, 348 U.S. 207, 75 S.Ct. 242, 99 L.Ed. 260, 1955 AMC 942, the Court went beyond the FELA to allow a Jones Act recovery against the estate of the deceased employer.[6]

Proceeding specifically to *Vreeland,* it is true that for many years courts have repeated *Vreeland's* language that only "pecuniary" damages are permitted. Yet Jones Act recovery has been, nevertheless, subtly but effectively expanded. First, *Vreeland's* definition of "pecuniary" was read so as to encompass what were at one time essentially nonpecuniary losses.[7] Second, juries have been permitted to hear evidence which, although tangentially related to "pecuniary" losses, is in fact highly probative of nonpecuniary losses.[8]

After *Moragne* was decided, admiralty decisions drifted much farther from *Vreeland's* limitation on damages.[9] Then came

---

**3.** *Kernan v. American Dredging Co., supra.*

**4.** *China Union Lines, Ltd. v. A. O. Andersen & Co.,* 5 Cir., 1966, 364 F.2d 769, 798, 1966 AMC 1653, 1695 (Brown, J., concurring in part and dissenting in part) (different context).

**5.** *The Arizona et al. v. Anelich,* 1936, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075, 1936 AMC 627; *Beadle v. Spenser,* 1936, 298 U.S. 124, 56 S.Ct. 712, 80 L.Ed. 1082, 1936 AMC 635. Robinson concludes that these cases "show that the Supreme Court is not so much transplanting the railroad statute with its railroad setting as it is growing the transplanted act in its new admiralty environment." G. Robinson, Admiralty 314 (West 1939).

**6.** Other examples of the consistent lead which the Jones Act has taken over FELA include: the extension of a Jones Act remedy to dock workers—in contrast to restrictive FELA interpretation of the definition of railroad workers, *Butler v. Whiteman,* 1958, 356 U.S. 271, 78 S.Ct. 734, 2 L.Ed.2d 754, 1959 AMC 2566; survival of the nonrailroad remedy of maintenance and cure after passage of the Jones Act, *Cortes v. Baltimore Insular Line, Inc.,* 1932, 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368, 1933 AMC 9; and the judicial creation of a Jones Act rescue doctrine, not found in FELA cases. *Cortes v. Baltimore Insular Line, Inc., supra* (dictum); *Gardner v. National Bulk Carriers, Inc.,* 4 Cir.,

1962, 310 F.2d 284, 1963 AMC 29 (en banc), cert. denied, 1963, 372 U.S. 913, 83 S.Ct. 728, 9 L.Ed.2d 721.

**7.** This judicial sleight of hand is well-demonstrated by the fact that admiralty courts began awarding damages for the deaths of minor children. *E. g. Complaint of Farrell Lines, Inc.,* S.D.Ga., 1975, 389 F.Supp. 194, 1976 AMC 1684. As *In re Sincere Navigation Corp.,* E.D. La., 1971, 329 F.Supp. 652, 655 & n.8, 1972 AMC 482, 485 & n.8 (Rubin, J.) points out, these awards could not come about unless the courts were awarding damages for *nonpecuniary* losses.

**8.** *E. g., Petition of Risdal & Anderson, Inc.,* 1968, D.Mass., 291 F.Supp. 353, 358, 1968 AMC 2474, 2479. *See generally* W. Prosser, The Law of Torts, § 127, at 907–08 (4th ed. 1971) (jury nullification).

**9.** Indeed, two leading opinions by then District Judge Rubin come close to repudiating *Vreeland's* principle (although the cases were not specifically under the Jones Act). *In re Sincere Navigation, supra; Dennis v. Central Gulf Steamship Corp.,* E.D.La., 1971, 323 F.Supp. 943, *aff'd,* 5 Cir., 453 F.2d 137, 1972 AMC 330, cert. denied, 1972, 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218. *See also In re Farrell Lines,*

*Gaudet,* which permitted recovery of the nonpecuniary loss of society at issue here. Liability in *Gaudet* was predicated on unseaworthiness, but, as discussed above, *Gaudet* necessarily applies to the Jones Act. Not only does the analysis above show that *Gaudet* controls in Jones Act cases involving loss of society, but a close reading of the majority and dissenting opinions in *Gaudet* makes clear the departure from *Vreeland. See* G. Gilmore & C. Black, The Law of Admiralty 371–72 (2d ed. 1975).

First, the *Gaudet* dissenters state: "Because of its relationship to the FELA . ., the Jones Act also has been read as forbidding recovery of the sentimental losses *approved by the Court today.*" 414 U.S. at 606, 94 S.Ct. at 825, 39 L.Ed.2d at 33, 1973 AMC at 2597–98 (Powell, J.) (emphasis supplied). In an accompanying footnote, the dissenters cite *Vreeland.* The dissenters thus decry the majority's "repudiation" of "[t]he traditional admiralty view . . . that such nonpecuniary damages are not recoverable under the . . . Jones Act." *Id.* at 605, 94 S.Ct. at 825, 39 L.Ed.2d at 32, 1973 AMC at 2597. Although one is cautioned that a majority opinion does not always necessarily say what the dissenters say it says, the dissenting Justices were in an excellent position to see exactly what the majority was doing and the consequences to existing decisions.[10]

Second, the opinion of the Court in *Gaudet* itself indicates that *Vreeland's* limitations are no longer to be followed. The *Gaudet* Court explicitly rejects arguments which caused early English Courts to add a pecuniary loss limitation to Lord Campbell's-type Acts. *Ibid.* at 588–90, 94 S.Ct. at 816–817, 39 L.Ed.2d at 23–24, 1973 AMC at

2584–86. In construing FELA, *Vreeland* relied upon those early English cases, and the *Gaudet* Court expressly recognizes that fact. *Ibid.* at 582 & 586 n.18, 94 S.Ct. at 813 & 815 n.18, 39 L.Ed.2d at 19 & 22 n.18, 1973 AMC at 2579 & 2582 n.18. Thus it cannot be denied that *Gaudet* totally rejects the policies upon which *Vreeland* was based. Moreover, *Gaudet* draws a careful distinction between judge-made limitations on damages and those enacted by state or federal legislatures, arguably presaging *Higginbotham. See, e. g., ibid.* at 585–88 & n.22, 94 S.Ct. at 814–817 & n.22, 39 L.Ed.2d at 21–23 & n.22, 1973 AMC at 2582–84 & n.22. *Gaudet* clearly places the *Vreeland* limitation into the judge-made category, which the Court then proceeds to "shape [in order to] comport with the humanitarian policy of the maritime law . . ." *Ibid.* at 588, 94 S.Ct. at 816, 39 L.Ed.2d at 23, 1973 AMC at 2584.

## II.

Unlike the en banc Court, I do not believe the recent but narrow holding in *Mobil Oil Corp. v. Higginbotham,* 1978, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581, 1978 AMC 1059, is controlling here. The en banc Court makes a mountain of the Supreme Court's molehill of silence. I cannot read so much into so little.

In *Higginbotham,* the Supreme Court granted Mobil's writ of certiorari on the sole question of:

Whether the maritime cause of action for deaths occurring within a state's territorial waters created by this Court in *Moragne* completely replaces the statutory cause of action for death mandated by

---

*Inc.,* E.D.La., 1971, 339 F.Supp. 91. *But see Petition of M/V ELAINE JONES,* 5 Cir., 1973, 480 F.2d 11, 33–34, 1973 AMC 843, 870–71 (modified upon rehearing, after *Gaudet* was decided, 513 F.2d 911, 1975 AMC 2098); p. 527.

**10.** It is certainly true that the *Gaudet* dissenters also felt that the majority was repudiating the pecuniary loss limitation expressly contained in the Death on the High Seas Act (DOHSA), and this portion of the dissent was relied upon in *Law v. Sea Drilling Corp.,* 5 Cir.,

1975, 523 F.2d 793, 796, 1977 AMC 2394, 2397 (on rehearing) (*Law II*). *Higginbotham* demonstrated that this reliance on the *Gaudet* dissent was misplaced, since *Higginbotham* effectively overruled *Law II.* But because *Gaudet* involved territorial waters—where DOHSA could not apply but where the Jones Act could—and because both the dissent and majority focused more on the Jones Act and *Vreeland* than on DOHSA, reliance on the *Gaudet* dissent is appropriate in this case.

Congress with respect to deaths occurring within the geographical scope of the Death on the High Seas Act.

Mobil Oil's Writ Application. Clearly, Mobil Oil did not ask the Court to even consider the question of damages under the Jones Act.

Nor did the Court depart from the reason it granted certiorari. The Court based its decision entirely on DOHSA. The entire opinion is cast in terms of an analysis of congressional intent under DOHSA. As the en banc Court itself points out, the Supreme Court did not even discuss the Jones Act in the case. P. 528.[11]

Nonetheless, even though *Higginbotham* involved the high seas, even though the opinion was based entirely on DOHSA, and even though the Jones Act was nowhere discussed in the Supreme Court opinion, the en banc Court reads in *Higginbotham* a holding of law applicable to the Jones Act and applicable in territorial waters. The en banc Court makes this quantum leap by pointing out that "While the Jones Act issue was not discussed in the opinion, it was raised squarely by the facts. . . ." P. 528. Specifically, the en banc Court adopts the reasoning of the panel opinion in *Ivy,* which points out that *Higginbotham* did not affirm as to the representatives of Shinn, even though Shinn sued under the Jones Act as well as under DOHSA. *Ivy v. Security Barge Lines, Inc.,* 5 Cir., 1978, 585

F.2d 732, 738. Therefore, the panel reasoned, the Supreme Court must have held explicitly that nonpecuniary damages are not recoverable *under the Jones Act.*

I think a more reasonable interpretation of *Higginbotham* is that the Supreme Court passed no judgment on the measure of damages under the Jones Act.[12] It considered solely the DOHSA issue and then reversed and "remanded for further proceedings consistent with this opinion," 436 U.S. at 626, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, 1978 AMC at 1064–65 thereby leaving open to the Court of Appeals, or on its direction the District Court, the possibility of Shinn's representatives recovering under the Jones Act.[13] All that the Court held was that as between *Moragne* and DOHSA, Congress intended that DOHSA should govern in wrongful death recoveries on the high seas. The fact that the Supreme Court does not even discuss the Jones Act provides strong support for this interpretation.

Alternatively, the most the Court in *Higginbotham* could have been holding is that in a wrongful death action involving a death on the high seas, DOHSA—where applicable—is *exclusive* and the Jones Act has to give way to DOHSA.[14]

The result of the Court's reading of *Higginbotham* is to seriously undermine *Gaudet* in its application to death on territorial waters. Despite the en banc Court's claim to the contrary, p. 528, the representatives of Shinn recovered not only under DOHSA

---

**11.** See Note, A Post-Higginbotham Analysis— *Ivy v. Security Barge Lines, Inc.,* 4 Maritime Lawyer 149, 152 (1979) ("[I]t is noteworthy that nowhere in *Higginbotham* is there any consideration of the Jones Act status of one of the victims.").

**12.** See Maraist, Maritime Wrongful Death— Higginbotham Reverses Trend and Creates New Questions, 39 La.L.Rev. 81, 91–92, 1979 ("Nowhere in *Higginbotham* did the Supreme Court allude to the Jones Act status of Shinn and his beneficiaries. . . . Consequently, the *Ivy* court may have read too much into the Court's silence in *Higginbotham*.").

**13.** The Jones Act death claim was left initially to the Court of Appeals. On remand this Court simply remanded the case to the District Court for consideration in light of the Supreme Court's mandate. In the District Court the case was thereafter settled with no Court ever

undertaking to determine whether, or to what extent, the Jones Act recoveries were subject to an overriding DOHSA restriction.

**14.** Even assuming that the Supreme Court in *Higginbotham did* interpret the Jones Act as it applies to the high seas, there is still no basis for extending this holding to a Jones Act death arising on territorial navigable waters. The en banc Court is no doubt concerned about a lack of uniformity. Yet in language which the en banc Court itself quotes, the Court in *Higginbotham* makes clear that "the measure of damages in coastal waters will differ from that on the high seas." 436 U.S. at 624, 98 S.Ct. at 2015, 56 L.Ed.2d at 587, 1978 AMC at 1064–65. Thus it is simply not the case that to reach the humanitarian result, it is necessary to "disregard history and jurisprudence." P. 529, n.13.

and the Jones Act, but under the general maritime law as well.[15] Applying the panel Court's extrapolation approach regarding the Jones Act (an approach that is implicitly affirmed by the en banc Court), the Supreme Court must have held that nonpecuniary damages are not recoverable under general maritime law, otherwise it would have affirmed as to the representatives of Shinn. Applying this approach to a death on *territorial waters,* a Court would have to hold nonpecuniary damages may not be recovered by the representatives of a Jones Act seaman who died on territorial waters when the claim is expressly brought and recovery sustained under the general maritime law.[16] *Gaudet* would thus be consigned to the briney deep alongside the *Harrisburg.*

*Moragne* takes on some leaks too. For against the efforts of *Moragne* to eliminate the irrational anomalies, *Moragne,* 398 U.S. at 395–96, 90 S.Ct. at 1784–85, 26 L.Ed.2d at 353–54, 1970 AMC at 983, the en banc Court's holding introduces a new one. Under *Gaudet,* the representatives of a *Sieracki* seaman, whose rights are derived from the relation of ship and seaman, could recover damages for nonpecuniary losses from an accident in territorial waters under the general maritime law, but the representatives of a Jones Act seaman in the same situation could not.[17]

The en banc Court's reluctance to apply *Moragne* and *Gaudet* to the Jones Act is based on a desire for uniform application of the Jones Act, and the result is a uniformity of sorts: the representatives of Jones Act seamen cannot recover nonpecuniary damages regardless of where the death occurred. But this uniformity directly conflicts with *Higginbotham's* recognition that the measure of damages in coastal waters will not be the same as that on the high seas.

No solution to the problem will eliminate all disparities in the law. But the purpose of the Jones Act emphasized in *Gaudet* is "to shape [a] remedy to comport with the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." [18] I would choose a disparity in recovery due to location of the accident over the anomaly of allowing representatives of a *Sieracki* seaman to recover damages disallowed representatives of a Blue Water Jones Act seaman. In short, I would interpret the Jones Act to provide *Gaudet* nonpecuniary, as well as pecuniary, damages, at least as to death claims arising on or out of territorial navigable waters.

---

15. As the District Court stated:

> We hold therefore that . . . there be judgment in favor of . . . the representatives of Shinn against Mobil under the Jones Act, the Death on the High Seas Act and the General Maritime Law.

*Higginbotham v. Mobil Oil Corporation,* W.D. La., 1973, 357 F.Supp. 1164, 1178. The Court of Appeals decision also recognized that the representatives of Shinn had recovered below under DOHSA, the Jones Act, *and* general maritime law. 545 F.2d at 424–25, 1977 AMC at 293.

16. Indeed, the panel opinion in *Ivy* explicitly states that a Jones Act seaman's survivors are limited to pecuniary damages, even when actions are brought under both the Jones Act and under the general maritime law. 585 F.2d at 738–39 n.8.

17. See Maritime Lawyer Note, *supra,* note 11, at 153–54 (discussing this and other anomalies).

18. 414 U.S. at 588, 94 S.Ct. at 816, 39 L.Ed.2d at 23, 1973 AMC at 2584.