681 F.2d 712
 Margaret W. FORD, as Administratrix & Personal
Representative of Estate of James Edward Ford,
Deceased, et al., Plaintiffs,
v.
Wallace WOOTEN, Individually and as father and next friend
of August Mark Wooten, a minor,
Defendant-Third-Party Plaintiff-Appellant,
v.
AMERICAN MOTORISTS INSURANCE COMPANY, Defendant-Third-Party
Defendant-Appellee.
 No. 80-5959.
 United States Court of Appeals,
Eleventh Circuit.
 July 26, 1982.
 
 1
 Ronald Payne, Fort Lauderdale, Fla., for defendant-third-party plaintiff-appellant.
 
 
 2
 Pyszka, Kessler, Adams & Solomon, Raymond O. Holton, Jr., Fort Lauderdale, Fla., for defendant-third-party defendant-appellee.
 
 
 3
 Appeal from the United States District Court for the Southern District of Florida.
 
 
 4
 Before GODBOLD, Chief Judge, ANDERSON, Circuit Judge, and HOFFMAN*, District Judge.
 
 WALTER E. HOFFMAN, District Judge:
 
 5
 This case comes before us on Wallace Wooten's appeal from the entry of summary judgment against him on his amended cross-claim against American Motorists Insurance Company (hereinafter American). The issue presented by the cross-claim is one of coverage under a homeowners insurance policy issued to Wooten by American. The original plaintiff, Margaret Ford, is not a party to this appeal; nor was she a party to the former appeal referred to infra.
 
 
 6
 Margaret Ford brought this action to recover for the death of her 17-year old son, James Edward Ford. At the time of his death, James Ford was a guest on a boat owned by Wallace Wooten. The decedent had accompanied Wooten and his 16-year old son, Mark, on a sailing trip to the Bahamas. During that trip, Wallace Wooten returned to Fort Lauderdale for personal reasons, leaving the boat under the control of the two boys, who apparently were good sailors. Subsequently, while skindiving away from the sailing vessel, near the Bahamas, James Ford drowned.
 
 
 7
 Margaret Ford originally brought this action for wrongful death under the Death on the High Seas Act (DOHSA), 46 U.S.C. §§ 761-767. The trial court later permitted plaintiff to amend her complaint by adding a claim under general maritime law for loss of society. Florida's direct action statute permitted Ford to sue American in the same suit. Count I alleged a cause of action in negligence under DOHSA. Count II alleged a cause of action of general maritime law under DOHSA. Thereafter, Wooten attempted to file a cross-claim against American in order to determine coverage under the homeowners insurance policy. Because of the untimeliness of the cross-claim, however, the district court struck it and indicated that the coverage issue should be determined in a separate action.
 
 
 8
 After a non-jury trial, the trial judge dictated his findings of fact and conclusions of law into the record. On the claim under general maritime law, the court found that the unseaworthiness of Wooten's vessel due to the inadequacy or incompetence of the crew was a contributing cause of Ford's death. The court found the damages under this claim to be $24,877 for pecuniary loss, $50,000 for loss of society, and $780.13 for funeral expenses. These amounts were reduced by fifty percent, however, because of the decedent's contributory negligence. As to plaintiff's DOHSA claim, the court found that Wallace Wooten's negligence in leaving his son and James Ford without adequate supervision was a contributing cause of Ford's death. The court further found the pecuniary damages to be $24,877, which sum also was reduced by fifty percent due to decedent's contributory negligence.
 
 
 9
 Despite having struck Wooten's cross-claim, the trial court did address the insurance coverage issue in an attempt to facilitate later application of the coverage solution to the judgment already rendered. Noting that Wooten's homeowners policy contained an exclusion for any claims "arising out of ownership, maintenance, operation, use, loading or unloading of any watercraft: (1) owned by or rented to any insured if the watercraft ... is a sailing craft ... 26 feet or more in overall length," the Court correctly found that Wooten's vessel was longer than 26 feet. The court then concluded that, because Ford's general maritime claim depended on the unseaworthy condition of the boat, the claim arose from ownership of the vessel, thus falling within the policy exclusion. As to Ford's DOHSA claim, however, the court found the exclusion inapplicable because the action was grounded on Wooten's negligence applicable to a situation away from the sailing vessel, rather than unseaworthiness. Accordingly, judgment was entered against American only for the $12,438.50 awarded on the DOHSA claim. Against Wallace Wooten, judgment was entered for the full $37,828.56.
 
 
 10
 An appeal brought by Wooten was subsequently dismissed by a panel of the old Fifth Circuit. Ford v. Wooten, 549 F.2d 201 (5th Cir. 1977) (unpublished). That court held that any argument concerning the $12,438.50 judgment against American had been mooted by American's intervening payment of the judgment. As to the remainder of the judgment against Wooten, however, the court concluded that the district court had erred in striking the cross-claim that would have determined the coverage issue, perhaps because without the cross-claim there was a serious question as to Wooten's standing to appeal. Therefore, the Court of Appeals remanded the case for final determination on questions of coverage.
 
 
 11
 On remand, the district court granted American's motion for summary judgment on the amended cross-claim, stating:
 
 
 12
 The Amended Cross-claim involved herein stems from Count Two of the Complaint, where (sic) is clearly based upon Plaintiff's unseaworthiness claim for recovery against Defendant, Cross-Plaintiff WALLACE WOOTEN. This is so reflected in the trial judge's findings of fact and conclusions of law, which were not challenged upon appeal to the United States Court of Appeals for the Fifth Circuit. Under the unseaworthiness doctrine, underlying negligence is not the basis of liability. It thereupon appears that the American Motorists Insurance Company personal liability insurance policy exclusion for any claims arising out of the Defendant WALLACE WOOTEN's ownership, maintenance, operation or use of a sailboat more than 26 feet in length applies to this matter and precludes coverage herein.
 
 
 13
 We agree with the conclusion of the district court and accordingly affirm.
 
 
 14
 The damages awarded by the district court in this action are of two types: (1) damages for pecuniary loss, which are recoverable under both DOHSA and general maritime law; and (2) damages for loss of society and funeral expenses, which may be recovered only under general maritime law. American has paid the judgment for pecuniary loss to plaintiff. Therefore, only the damages for loss of society and funeral expenses are at issue here.
 
 
 15
 Before proceeding further, we note the unique procedural posture of this case. After the district court awarded damages and after the decision of the old Fifth Circuit, the Supreme Court handed down its decision in Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978). That case held that damages for loss of society may not be recovered under general maritime law in suits to which DOHSA is also applicable. Thus, the damages awarded by the trial court for loss of society could not now be awarded if this case were to be tried again. That issue is not presented here, however; the original plaintiff is not even before this court. The propriety of the damage awards in this suit was finally determined by the trial court and was not disputed on appeal to the old Fifth Circuit. Therefore, we are now faced only with the issue of insurance coverage of the damages previously awarded.
 
 
 16
 Under the terms of Wooten's insurance policy, damages arising from the ownership or operation of his boat were not covered by the insurer. The trial court concluded that Wallace Wooten's negligence in leaving the two boys without adequate supervision did not arise from ownership or operation of the vessel, but that the unseaworthy condition did. Appellant's sole contention is that plaintiff's claim under general maritime law was not restricted to a claim of unseaworthiness, but encompassed negligence as well. Wooten argues that, as a matter of law, the district court erred in concluding that the general maritime law only permits an action for wrongful death based on an unseaworthiness theory.
 
 
 17
 We question whether an issue concerning the theoretical basis for the judgment entered between Wooten and the original plaintiff is now before us. The remand from the old Fifth Circuit was for "further proceedings and for entry of a final judgment on questions of coverage between Wooten and American Motorists."[1] Even assuming that the underlying theoretical questions are presented, we are not able to agree with Wooten's contentions. In asserting that the trial court erred in concluding that general maritime law only permits an action for wrongful death that is caused by unseaworthiness, appellant relies on the following language from the findings that the court dictated into the record.
 
 
 18
 Because the general maritime recovery hinges upon the condition of the vessel itself, that is, the unseaworthiness of the PHYTARUS, this Court finds that the plaintiffs' general maritime claim is a claim arising out of the ownership of a sailing vessel 26 feet or more in length and, therefore, is a claim which is excluded under the policy of insurance.
 
 
 19
 We are not totally convinced that this language does indicate, as appellant contends, that the trial court concluded as a matter of law that only unseaworthiness supports a recovery for wrongful death under general maritime law. The court's oral findings are susceptible to an alternative interpretation-the court may have found that the facts of this case did not support a general maritime law recovery for wrongful death caused by negligence.[2]
 
 
 20
 Even if we assume that the district court did conclude as a matter of law that general maritime law permits a recovery for wrongful death only on the basis of unseaworthiness, we do not believe that conclusion to be erroneous. Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), first established a cause of action under general maritime law for wrongful death due to breach of maritime duties. In that case, plaintiff had made claims under both negligence and unseaworthiness theories, but the trial court dismissed the unseaworthiness claim. Thus, the Supreme Court's opinion, which mentioned unseaworthiness but never expressly discussed negligence, pertained only to an unseaworthiness claim. Moreover, subsequent Supreme Court cases have indicated that Moragne applied the wrongful death remedy only where death resulted from unseaworthiness. See, e.g., Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 574, 94 S.Ct. 806, 809, 39 L.Ed.2d 9 (1974).
 
 
 21
 The question we consider, then, is whether Moragne should be extended to permit recovery under general maritime law for wrongful death caused by negligence. Ivy v. Security Barge Lines, Inc., 606 F.2d 524 (5th Cir. 1979) (en banc), cert. denied, 446 U.S. 956, 100 S.Ct. 2927, 64 L.Ed.2d 815 (1980), considered this exact question, but in a slightly different context. Therein, the Court of Appeals determined the applicability of a general maritime law remedy for negligently induced wrongful death where a cause of action for negligence also exists under the Jones Act, 46 U.S.C. § 688. The court concluded:
 
 
 22
 Moragne did not create or even discuss an action for negligence; it dealt only with death occasioned by unseaworthiness. The suggestion that the Jones Act measure of damages can be supplemented by the Moragne -cause-of-action-Gaudet -damages rule will not bear analysis; that hybrid could be spawned in but one context, the coupling of unseaworthiness (capable of producing Gaudet ) with a Jones Act claim to give birth to Jones Act damages for negligence. To consider the Moragne-Gaudet result a supplemental remedy to the Jones Act when the suit is for negligence only is not to supplement the statute but to alter the interpretation it has continuously received.
 
 
 23
 606 F.2d at 527 (footnote omitted). We consider Ivy highly persuasive, and see no reason to distinguish it simply because it related to the interaction of the Jones Act with general maritime law, whereas the present case relates to the interaction of DOHSA with general maritime law. As with the Jones Act, "supplementation" of DOHSA's pecuniary loss remedy with the Moragne loss-of-society remedy would totally alter the remedial scheme, which already provides a cause of action for death due to negligence. In fact, this logic provided the basis for the holding in Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978).[3]
 
 
 24
 The only other case that we have found which discusses the possibility of an action under general maritime law for wrongful death caused by negligence is Nelson v. United States, 639 F.2d 469 (9th Cir. 1980).[4] That court held that "the need for uniformity in maritime wrongful death actions requires extension of Moragne to cover claims based on negligence, to the exclusion of state wrongful death statutes." Id. at 473. We recognize that such extension of the Moragne remedy would ensure uniformity that otherwise would not exist in those wrongful death cases that fall outside of DOHSA and the Jones Act. As indicated by Ivy, however, such application of the Moragne remedy creates inconsistency with those two federal statutes. At least where statutory remedies exist, we deem consistency with the federal remedial schemes to be more important than the somewhat limited loss of uniformity. Therefore, we hold that where a cause of action exists for wrongful death under DOHSA, no additional action exists under general maritime law for wrongful death caused by negligence; the Moragne remedy applies only to unseaworthiness.
 
 
 25
 Having concluded that the trial court did not reach an erroneous legal conclusion, we AFFIRM.
 
 
 
 *
 Honorable Walter E. Hoffman, U. S. District Judge for the Eastern District of Virginia, sitting by designation
 
 
 [1]
 The express wording of the Fifth Circuit's unpublished opinion seems to restrict the issues on remand to a determination of insurance coverage for the damages awarded to the plaintiff. Arguably, however, that opinion should be more broadly interpreted in light of Wooten's argument on his first appeal. In the conclusion to his opening brief in that appeal, he stated:
 The Trial Judge erred in not finding that the negligence he found under the DOHSA, covered by the COMPANY, was also encompassed by the MORAGNE REMEDY. Judgment should have been given against the COMPANY for damages for loss of society as well as pecuniary damages.
 Thus, in seeking a determination of the coverage question, Wooten indicated that the issue of the theoretical basis for the recovery was interwoven with the coverage question. The short opinion of the Fifth Circuit did not specify whether the additional issue of the basis for recovery should be treated as part of the coverage question on remand. Our hesitancy to consider the basis for recovery in the absence of the plaintiff would be significantly lessened by the fact that the total amount recovered by the plaintiff would not be affected by a determination of the theoretical basis for that recovery. At oral argument, we were told that Wooten had paid the judgment against him, less a credit for the amount paid by American under the judgment entered on Count I.
 
 
 [2]
 Appellant has argued that the trial court's finding of negligence, which was made in the DOHSA context, is equally applicable to the general maritime claim. Although we do not decide the issue, we have reservations about the validity of this proposition. First, Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), which established a cause of action under general maritime law for wrongful death, specified that the action was for "death caused by violation of maritime duties." Id. at 409. We are not certain that the negligence found by the trial court in this case-leaving the boys on board the boat without adequate supervision or limitations on their activities-is a breach of a maritime duty. Second, Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), indicates that admiralty jurisdiction, as indicated by the relationship of a tort to "traditional maritime activity," may be broader under DOHSA than in other contexts. Id. at 262-64, 271 & n. 20, 93 S.Ct. 501-02, 506 & n. 20
 
 
 [3]
 We do not rely on Higginbotham's holding because of the procedural stance of this case. Higginbotham held that no general maritime law damages are available, even under an unseaworthiness theory, where DOHSA is also applicable. In this case, however, a final judgment was rendered under general maritime law for death due to unseaworthiness, and the validity of that damage award is not in issue here. We hesitate to apply Higginbotham now to preclude only general maritime damages caused by negligence. Moreover, if the trial court originally had permitted Wooten's cross-claim, as the Fifth Circuit ruled should have been done, Higginbotham would have come down too late to affect this decision. In light of these anomalies, we do not simply apply Higginbotham ; rather, we rely on Ivy, which specifically held that wrongful death due to negligence was not even actionable under general maritime law
 
 
 [4]
 Certain language in Law v. Sea Drilling Corp., 523 F.2d 793 (5th Cir. 1975), cited by appellant, does suggest that wrongful death caused by negligence is actionable under Moragne. See id. at 796. That language, however, lies within an extensive quotation from Gilmore & Black's The Law of Admiralty, which the court cited for an entirely different proposition. Therefore, we do not consider Law to have adopted Gilmore & Black's unsubstantiated assertion that negligence is actionable under Moragne