Case affirmed by Supreme Court
opinion filed 6/4/01

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

CELESTINE GARRIS, Administratrix of
the estate of Christopher Garris,
deceased,
Plaintiff-Appellant,

v.                                                    No. 98-2368

NORFOLK SHIPBUILDING & DRYDOCK
CORPORATION; E. T. GRESHAM,
INCORPORATED,
Defendants-Appellees.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Jerome B. Friedman, District Judge.
(CA-98-382-2)

Argued: December 2, 1999

Decided: April 3, 2000

Before MURNAGHAN and WILLIAMS, Circuit Judges, and
Cynthia Holcomb HALL, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

_____

Reversed and remanded by published opinion. Judge Williams wrote
the opinion, in which Judge Murnaghan joined. Senior Judge Hall
wrote an opinion concurring in the judgment.

_____

COUNSEL

**ARGUED:** John R. Crumpler, Jr., KAUFMAN & CANOLES, P.C.,
Norfolk, Virginia, for Appellant. Robert Martin Tata, HUNTON &

WILLIAMS, Norfolk, Virginia, for Appellees. **ON BRIEF:** Patrick H. O'Donnell, KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellant. Carl D. Gray, HUNTON & WILLIAMS, Norfolk, Virginia, for Appellee Norfolk Shipbuilding; Glen A. Huff, M. Todd Gerber, HUFF, POOLE & MAHONEY, P.C., Virginia Beach, Virginia, for Appellee Gresham.

_____

## OPINION

WILLIAMS, Circuit Judge:

The sole issue on appeal is whether we should construe or extend the United States Supreme Court's decision in <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970), which recognized a general maritime law cause of action for wrongful death based upon unseaworthiness, to include a general maritime law cause of action for wrongful death based upon negligence. We agree with the district court that the Supreme Court did not create a general maritime law cause of action for wrongful death based upon negligence in <u>Moragne</u>. We find it appropriate, however, to apply the principles of <u>Moragne</u> and its progeny to recognize one. We, therefore, reverse the district court's dismissal of Celestine Garris's claim and remand for further proceedings.

I.

Christopher Garris (Garris's son) worked as a sandblaster aboard the USNS MAJ. STEPHEN W. PLESS, a ship berthed in the navigable waters of the United States. He was actually employed by Tidewater Temps but worked on behalf of Mid-Atlantic Coastings (Mid-Atlantic), a subcontractor of Norfolk Shipbuilding & Drydock Corporation (Norfolk). E.T. Gresham, Inc. (Gresham), another subcontractor for Norfolk, had employees aboard the same ship. On April 8, 1997, a crane operator working for Gresham accidentally caused Garris's son to fall off a reserve hopper on the ship, which was used to load sand for sandblasting. Garris's son died as a result of the accident.

2

After receiving statutory death benefits under the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. §§ 901-950 (West 1986 & Supp. 1999), Christopher Garris's mother, Celestine Garris (Garris), brought suit in the United States District Court for the Eastern District of Virginia against Norfolk and Gresham, seeking recovery for wrongful death based upon negligence under general maritime law and the Virginia wrongful-death statute. According to Garris, the crane operator's negligence and Norfolk's use of an inadequate communication signaling system were the reasons for her son's death. The district court dismissed her suit on the ground that general maritime law does not recognize a negligence-based cause of action.[1]

Garris argues on appeal that the Supreme Court's holding in Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970), which recognized a general maritime law cause of action for wrongful death based upon unseaworthiness, also established a general maritime law cause of action for wrongful death based upon negligence. In the alternative, Garris asks us to extend the holding of Moragne to create a general maritime law cause of action for wrongful death based upon negligence. Reviewing this legal question de novo, see Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991) ("We review the district court's determinations of law de novo."), we conclude that the principles developed in Moragne and its progeny compel us to recognize a negligence-based action. We, therefore, reverse the district court's dismissal of this claim and remand for further proceedings.

II.

In order to determine whether the district court erred in dismissing Garris's suit, we must first consider whether the Supreme Court in Moragne v. States Marine Lines, Inc., 398 U.S. 375 (1970), intended to create a general maritime law cause of action for wrongful death

_____

[1] The district court dismissed with prejudice Garris's general maritime law wrongful-death claim. The district court dismissed without prejudice her state law claim under the Virginia wrongful-death statute. Garris has not appealed the district court's dismissal of her state law claim and has since filed that claim in state court only against Gresham.

3

based upon negligence. Accordingly, we must examine the language and context of <u>Moragne</u>, including the events and developments leading up to the Supreme Court's decision in that case.

A. Pre-<u>Moragne</u>

Our discussion begins with <u>The Harrisburg</u>, 119 U.S. 199 (1886), <u>overruled by Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970), in which the Supreme Court held that general maritime law did not allow recovery for wrongful death. In <u>The Harrisburg</u>, the widow and child of the decedent, Rickards, sought to recover damages for Rickards's death "caused by the negligence of the steamer" that collided with Rickards's schooner. <u>See id.</u> at 199. The Court had to determine whether Rickards's survivors could recover for wrongful death absent a state statute or act of Congress affirmatively allowing such recovery. <u>See id.</u> at 204. The Court noted that at common law there was no civil action for an injury that resulted in death and that English maritime law also had no cause of action for wrongful death on the high seas. <u>See id.</u> The Court concluded that because

> it is now established that in the courts of the United States no action at law can be maintained for [wrongful death] in the absence of a statute giving the right, and it has not been shown that the maritime law, as accepted and received by maritime nations generally, has established a different rule for the government of the courts of admiralty from those which govern courts of law in matters of this kind, we are forced to the conclusion that no such action will lie in the courts of the United States under the general maritime law.

<u>Id.</u> at 213.

Despite the rule of <u>The Harrisburg</u>, which prohibited recovery for wrongful death under general maritime law, two significant developments in maritime law softened the harshness of <u>The Harrisburg</u>. First, in 1920, Congress enacted both the Death on the High Seas Act (DOHSA), 46 U.S.C.A. §§ 761 - 768 (West 1975 & Supp. 1999), and the Jones Act, 46 U.S.C.A. app. § 688 (West Supp. 1999), which afforded recovery for wrongful death in certain circumstances.**2** Sec-
_____

**2** DOHSA provides, in pertinent part, that "[w]henever the death of a person shall be caused by wrongful act . . . occurring on the high seas

4

ond, federal courts began to recognize the application of state wrongful-death statutes to fatal accidents that occurred in state territorial waters. See Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 206-08 (1996) (describing the response of "[f]ederal admiralty courts [in] temper[ing] the harshness of The Harrisburg's rule by allowing recovery under state wrongful-death statutes"); Western Fuel Co. v. Garcia, 257 U.S. 233, 242 (1921) (finding that California's wrongful-death statute applied to the death of a maritime worker in state territorial waters). Consequently, in the years that followed The Harrisburg, state wrongful-death statutes -- which often encompassed wrongful-death causes of action based upon negligence, but not unseaworthiness, see Moragne, 398 U.S. at 398-99 --"proved an adequate supplement to federal maritime law[] until a series of this Court's decisions transformed the maritime doctrine of unseaworthiness into a strict liability rule."3 Yamaha, 516 U.S. at 207-08. Because of this new development in maritime law, unseaworthiness, which originally was an obscure and rarely used cause of action for which many state wrongful-death statutes did not account, evolved into a cause of action that "soon eclipsed ordinary negligence as the primary basis of recovery when a seafarer was injured or killed." Id. at 208. The evolution of the unseaworthiness doctrine, however, also created gaps in

---

beyond a marine league from the shore of any State ... the personal representative of the decedent may maintain a suit for damages in the district courts of the United States." 46 U.S.C.A.§ 761 (West 1975). DOHSA, therefore, provides a federal claim for the wrongful death of any person that occurs more than a marine league, or three miles, from shore.

The Jones Act states that "[a]ny seaman who shall suffer personal injury in the course of his employment may . . . maintain an action for damages at law . . . and in case of death of such seaman as a result of any such personal injury the personal representative may maintain an action for damages at law . . . ." 46 U.S.C.A. app. § 688(a) (West Supp. 1999). Thus, the Jones Act permits recovery for the wrongful death of a seaman in all navigable waters.

**3 Mahnich v. Southern S.S. Co.**, 321 U.S. 96 (1944), Seas Shipping Co. v. Sieracki, 328 U.S. 85 (1946), and Mitchell v. Trawler Racer, Inc., 362 U.S. 539 (1960), all set forth and developed the rule that a shipowner's liability for unseaworthiness is absolute.

5

the law whereby recovery for wrongful death based upon unsea-
worthiness could depend on mere happenstance. For example, if death
occurred within state territorial waters, then recovery was unlikely
because many state wrongful-death statutes did not include causes of
action based upon unseaworthiness. See Moragne, 398 U.S. at 395.
By contrast, if the death occurred more than three miles from shore,
then recovery for wrongful death based upon unseaworthiness was
possible under DOHSA. See id. The emergence of unseaworthiness
as a viable and powerful tool for asserting claims against shipowners,
and the discrepancies that necessarily followed, set the stage for
Moragne, which gave the Supreme Court the opportunity to revisit
the vitality and soundness of The Harrisburg in light of the changing
maritime landscape.

B. Moragne v. States Marine Lines, Inc.

Moragne was a longshoreman who was killed aboard a ship in
Florida's navigable waters. See Moragne v. States Marine Lines, Inc.,
398 U.S. 375, 376 (1970). His widow sued in state court for wrongful
death based upon unseaworthiness and negligence. See id. After
removal to federal court, the district court dismissed her unseaworthi-
ness claim, holding that general maritime law did not permit recovery
for wrongful death based upon unseaworthiness in state territorial
waters, and, unlike her negligence-based claim, Florida's wrongful-
death statute did not encompass wrongful-death based upon unsea-
worthiness. See id. The only issue on appeal, therefore, was whether
general maritime law recognized a cause of action for wrongful death
based upon unseaworthiness. See id. at 377.

The Court's analysis began with The Harrisburg, which, as noted
above, based its holding upon the premise that neither American nor
English common law recognized civil actions for injuries that resulted
in death. The Moragne Court, however, concluded that the Court's
construction of the common law rule in The Harrisburg "was based
upon a particular set of factors that had, when The Harrisburg was
decided, long since been thrown into discard even in England, and
that had never existed in this country at all." Id. at 381. Moreover, the
Court noted that significant developments in American maritime law
had further undercut The Harrisburg, including the emergence of

6

state wrongful-death statutes and Congress's enactment of DOHSA and the Jones Act. See id. at 390. The Court stated that

> the work of the legislatures has made the allowance of recovery for wrongful death the general rule of American law, and its denial the exception. Where death is caused by the breach of a duty imposed by federal maritime law, Congress has established a policy favoring recovery in the absence of a legislative direction to except a particular class of cases.

Id. at 393. The Court, therefore, found it necessary to address "whether Congress has given such a direction[to deny recovery for wrongful death under general maritime law] in its legislation granting remedies for wrongful deaths in portions of the maritime domain." Id.

Examining the Jones Act and DOHSA to determine if they should be construed to preclude a general maritime cause of action for wrongful death within state territorial waters, the Moragne Court pointed to three anomalies that would be perpetuated if Congress had indeed intended the Jones Act and DOHSA to preclude such recovery. First, identical conduct violating federal law in state territorial waters, such as the furnishing of an unseaworthy ship, would give rise to liability only if the victim were injured, but not killed. See id. at 395. Second, identical violations of the duty to furnish a seaworthy ship that resulted in death would give rise to liability for unseaworthiness under DOHSA more than three miles from shore but not within three miles of shore if the state's wrongful-death statute did not encompass unseaworthiness claims. See id. Third, a seaman, covered by the Jones Act, would have no cause of action for unseaworthiness while a longshoreman "to whom the duty of seaworthiness was extended only because he performs work traditionally done by seamen, [would have] such a remedy when allowed by a state statute." Id. at 395-96. Based upon these obvious anomalies, which arose from the emergence of unseaworthiness as a viable and prominent maritime cause of action, the Court concluded that Congress could not have intended to foreclose wrongful-death remedies in state territorial waters when it passed the Jones Act and DOHSA. The Court reasoned instead that "[t]he void that existed in maritime law up until 1920 [when Congress enacted DOHSA] was the absence of any remedy for

7

wrongful death on the high seas. Congress, in acting to fill that void, legislated only to the three-mile limit because that was the extent of the problem." Id. at 398. Congress did not need to extend its reach into state territorial waters because "[t]he beneficiaries of persons meeting death on territorial waters did not suffer at that time from being excluded from the coverage of [DOHSA]," largely because "the primary basis for recovery under state wrongful death statutes was negligence" and unseaworthiness was a little used cause of action. Id. However,

> [s]ince that time the equation has changed drastically, through this Court's transformation of the shipowner's duty to provide a seaworthy ship into an absolute duty not satisfied by due diligence. The unseaworthiness doctrine has become the principal vehicle for recovery by seamen for injury or death, overshadowing the negligence action made available by the Jones Act; and it has achieved equal importance for longshoremen and other harbor workers to whom the duty of seaworthiness was extended because they perform work on the vessel traditionally done by seamen. The resulting discrepancy between the remedies for deaths covered by [DOHSA] and for deaths that happen to fall within a state wrongful-death statute not encompassing unseaworthiness could not have been foreseen by Congress.

Id. at 399 (internal citations omitted and emphasis added).

The Court concluded that the unforeseen development of unseaworthiness as a primary means of recovery under maritime law -- and not a congressional intent to foreclose recovery for wrongful death in state territorial waters -- was the primary reason for the anomalies that had emerged after The Harrisburg. See id. at 399-400. Noting that its recognition of unseaworthiness as a general maritime law wrongful-death cause of action furthered Congress's stated purpose of "uniformity in the exercise of admiralty jurisdiction" in enacting the Jones Act, id. at 401 (internal quotation marks omitted), the Court overruled The Harrisburg, and stated that "[w]e do not regard the rule of The Harrisburg as a closely arguable proposition -- it rested on a most dubious foundation when announced[and] has become an increasingly unjustifiable anomaly as the law over the

8

years has left it behind," id. at 404. Concluding that its decision "d[id] not require the fashioning of a whole new body of federal law, but merely remov[al of] a bar to access to the existing general maritime law," id. at 405-06, the Court held that "an action does lie under general maritime law for death caused by violation of maritime duties," id. at 409.**4**

Our examination of the language and context of Moragne reveals three crucial points that guide our analysis. First, the sole issue on appeal in Moragne was whether general maritime law recognized a wrongful-death cause of action based upon unseaworthiness; negligence was simply not an issue before the Court. See id. at 377. Second, the Court in Moragne referred repeatedly to unseaworthiness without expressly mentioning negligence. See Ford v. Wooten, 681 F.2d 712, 715 (11th Cir. 1982) (noting that Moragne mentioned unseaworthiness but never expressly discussed negligence); Ivy v. Security Barge Lines, Inc., 606 F.2d 524, 527 (5th Cir. 1979) (en banc) ("[Moragne] dealt only with an unseaworthiness claim asserted under general maritime law."). Third, the unforeseen evolution of the unseaworthiness doctrine as a powerful tool for recovery under maritime law was the stated predicate for the Court's analysis, and indeed, it played a large part in the Court's decision to overrule The Harrisburg. As the Court later recognized in Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996), "[t]he disparity between the unseaworthiness doctrine's strict-liability standard and negligence-based state wrongful-death statutes figured prominently in our landmark Moragne decision." Id. at 208.

The Moragne Court's clear focus on unseaworthiness, as opposed

_____

**4** Two years after the Court's decision in Moragne, Congress passed the 1972 amendments to the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C.A. §§ 901-950 (West 1986 & Supp. 1999), and specifically eliminated unseaworthiness as a cause of action for wrongful death as it related to longshoremen and harbor workers, such as Garris's son. See 33 U.S.C.A. § 905(b) (West 1986) ("The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness. . . ."). The general maritime law cause of action for wrongful death based upon unseaworthiness still remains viable for true seamen. See Miles v. Apex Marine Corp., 498 U.S. 19, 30 (1990).

9

to maritime duties as a whole, is most evident in the Court's analysis of the three anomalies that arose after the emergence of unseaworthiness as a strict liability doctrine. Two of the three anomalies identified by the Court in Moragne were that: (1) identical violations of the duty of seaworthiness, each resulting in death, could give rise to liability more than three miles from shore but not within the territorial waters of a state that did not include unseaworthiness in its wrongful-death statute, and (2) a seaman, covered by the Jones Act, would have no cause of action for unseaworthiness while a longshoreman "to whom the duty of seaworthiness was extended only because he performs work traditionally done by seamen, [would have] such a remedy when allowed by a state statute." Id. at 395-96. The Court framed these two anomalies specifically in terms of unseaworthiness; these anomalies were cause for concern only within that context. The third anomaly, that identical violations of federal law, such as the furnishing of an unseaworthy vessel, would give rise to liability if the victim was injured but not killed if the state wrongful-death statute did not encompass unseaworthiness, see id. at 395, arguably might have applied to negligence-based actions, at least to the extent that state wrongful-death statutes did not include a cause of action for negligence-based wrongful death. As the Court noted in Miles v. Apex Marine Corp., 498 U.S. 19 (1990), however, every state had a wrongful-death statute that did provide recovery for negligence-based actions even where the state did not provide similar recovery for unseaworthiness-based actions. See id. at 25. Consequently, none of these three anomalies, which played a prominent role in the Moragne Court's decision, applied equally between a general maritime law cause of action for wrongful death based upon unseaworthiness and a general maritime law cause of action for wrongful death based upon negligence. We have no difficulty concluding that Moragne recognized only a general maritime law cause of action for wrongful death based upon unseaworthiness.

C. Post-Moragne

Garris argues, nevertheless, that the Supreme Court's later decision in Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996), suggests that Moragne's holding was broader than a simple recognition of a general maritime law cause of action for wrongful death based upon unseaworthiness. In Yamaha, the Supreme Court addressed whether

10

state remedies remain applicable in "maritime wrongful-death cases in which no federal statute specifies the appropriate relief and the decedent was not a seaman, longshore worker, or person otherwise engaged in a maritime trade." Id. at 202. The Court held that "state remedies remain applicable in such cases and have not been displaced by the federal maritime wrongful-death action recognized in [Moragne]." Id. Yamaha involved a jet ski accident that occurred in navigable waters. The parents of the decedent sued the jet ski manufacturer, which responded that state remedies were not applicable to accidents in navigable waters and that federal maritime law controlled to the exclusion of state law. The Court, therefore, had to address whether "the federal maritime claim for wrongful death recognized in Moragne suppl[ies] the exclusive remedy in cases involving the deaths of nonseafarers in territorial waters." Id. at 205. In deciding that federal maritime claims for wrongful death did not displace state remedies, the Court briefly discussed Moragne and included two footnotes that, according to Garris, support her position. The first, footnote seven, states that

> [i]f Moragne's wrongful-death action did not extend to nonseafarers like [the decedent], one could hardly argue that Moragne displaced the state-law remedies the Calhouns seek. Lower courts have held that Moragne's wrongful-death action extends to nonseafarers. We assume, for purposes of this decision, the correctness of that position. Similarly, as in prior encounters, we assume without deciding that Moragne also provides a survival action. The question we confront is not what Moragne added to the remedial arsenal in maritime cases, but what, if anything, it removed from admiralty's stock.

Id. at 211 n.7 (internal citations omitted). The other, footnote eleven, states that "[w]hile unseaworthiness was the doctrine immediately at stake in Moragne, the right of action, as stated in the Court's opinion, is `for death caused by violation of maritime duties.'" Id. at 214 n.11 (citing, inter alia, Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 630 (1959) (stating that negligence is a violation of a

11

maritime duty), and G. Gilmore & C. Black, The Law of Admiralty 368 (2d ed. 1975)).**5**

Garris argues that these footnotes demonstrate that the Court interprets <u>Moragne</u> as recognizing a right of action "for death caused by violation of maritime duties," including negligence. <u>Moragne</u>, 398 U.S. at 409. We disagree. Although footnotes seven and eleven, read by themselves, arguably support Garris's position, particularly footnote eleven's reference to "the right of action" as being for the "violation of maritime duties," we note that the Court in footnote seven expressly refrained from addressing this question:"The question we confront is not what <u>Moragne</u> added to the remedial arsenal in maritime cases, but what, if anything, it removed from admiralty's stock." <u>Yamaha</u>, 516 U.S. at 210 n.7. Moreover, the Court in <u>Yamaha</u> recognized that <u>Moragne</u> relied in large part on unseaworthiness, stating explicitly that "[t]he disparity between the unseaworthiness doctrine's strict liability standard and negligence-based state wrongful-death statutes figured prominently in our landmark <u>Moragne</u> decision," <u>id.</u> at 208, and that "[t]he uniformity concern that drove our decision in <u>Moragne</u> related . . . to the availability of unseaworthiness as a basis of liability," <u>id.</u> at 211. <u>Yamaha</u>'s recognition of the historical and legal context of <u>Moragne</u> further supports our belief that <u>Moragne</u> was a limited holding that came in response to a set of concerns that arose specifically in the context of unseaworthiness.

_____

**5** G. Gilmore & C. Black, <u>The Law of Admiralty</u> 368 (2d ed. 1975) states that "[f]rom Justice Harlan's discussion of the `anomalies' which the <u>Moragne</u> decision was designed to avoid several conclusions clearly follow . . . . The remedy provides recovery for deaths caused by negligence as well as for deaths caused by unseaworthiness. . . ." We note that this treatise offers no analysis to support its assertion that <u>Moragne</u> created a general maritime law cause of action for wrongful death based upon negligence. As discussed above, we construe the <u>Moragne</u> Court's analysis of the three anomalies differently than Gilmore & Black and conclude that the three anomalies applied only in the context of unseaworthiness. <u>See supra</u> part II.B. (discussing the three anomalies). At least one circuit has expressly rejected Gilmore & Black's reading of <u>Moragne</u>. <u>See Ford v. Wooten</u>, 681 F.2d 712, 717 n.4 (11th Cir. 1982) (referring to "Gilmore & Black's unsubstantiated assertion that negligence is actionable under <u>Moragne</u>").

12

Our conclusion is bolstered by those few circuits that have addressed this issue. In <u>Ford v. Wooten</u>, 681 F.2d 712 (11th Cir. 1982), for example, the Eleventh Circuit refused to construe <u>Moragne</u> as creating a general maritime law cause of action for wrongful death based upon negligence, stating that <u>Moragne</u>,"which mentioned unseaworthiness but never expressly discussed negligence, pertained only to an unseaworthiness claim." <u>Id.</u> at 715. Likewise, in <u>Ivy v. Security Barge Lines, Inc.</u>, 606 F.2d 524 (5th Cir. 1979) (en banc), the Fifth Circuit recognized that "<u>Moragne</u> did not create or even discuss an action for negligence; it dealt only with death occasioned by unseaworthiness." <u>Id.</u> at 527. Even the case upon which Garris relies, <u>Nelson v. United States</u>, 639 F.2d 469 (9th Cir. 1980), supports our conclusion that <u>Moragne</u> did not itself recognize a general maritime law cause of action for wrongful death based upon negligence. In <u>Nelson</u>, the Ninth Circuit addressed "whether or not the Government owes a duty of care to the employees of an independent contractor which has been engaged by the Government to perform hazardous maritime work." <u>Id.</u> at 470. In determining the "[t]he precise nature of plaintiff's cause of action," the court noted that prior to <u>Moragne</u>,

> there was no general maritime common law cause of action for wrongful death; state wrongful death acts were applied by federal courts sitting in admiralty. We have found no case deciding whether a <u>Moragne</u> suit may be based upon negligence as well as unseaworthiness. <u>We hold that the need for uniformity in maritime wrongful death actions requires extension of Moragne to cover claims based on negligence, to the exclusion of state wrongful death statutes.</u>

<u>Id.</u> at 473 (internal citation omitted and emphasis added). Thus, although the court found it appropriate to extend <u>Moragne</u>, it also recognized that <u>Moragne</u> did not itself create a general maritime law cause of action for wrongful death based upon negligence.[6]

_____

[6] Indeed, Garris can point to only one federal court of appeals that has construed <u>Moragne</u> consistently with her position. In <u>Wahlstrom v. Kawasaki Heavy Indus.</u>, 4 F.3d 1084 (2d Cir. 1993), the Second Circuit addressed whether "actions brought under the federal courts' admiralty jurisdiction are governed solely by federal maritime law." <u>Id.</u> at 1085. The court, after a brief discussion of <u>Moragne</u>, noted that

13

Finally, Garris correctly notes that the <u>Moragne</u> Court referred to maritime duties in its holding: "We accordingly overrule <u>The Harrisburg</u>, and hold that an action does lie under general maritime law for death caused by violation of maritime duties." <u>Id.</u> at 409. We do not believe, however, that this vague reference to "maritime duties," taken in the context of the entire decision and the events prompting that decision, is sufficient to counterbalance the <u>Moragne</u> Court's otherwise clear reliance on unseaworthiness as the basis for its decision. The context under which <u>Moragne</u> was decided speaks volumes; neither the events leading up to <u>Moragne</u> -- specifically, the emergence of unseaworthiness as a strict liability doctrine and its absence in many state wrongful-death statutes -- nor the Court's analysis of the three anomalies, framed in the specific context of unseaworthiness, apply equally to negligence-based actions.**7**

_____

> [t]he Court was addressing the specific issue of what, if any remedy should be available for a wrongful death caused within state territorial waters by a vessel's unseaworthiness, a claim for which there was no right of recovery under applicable state law. In fashioning the remedy, however, the Supreme Court did not limit the new right of recovery to unseaworthiness claims, but instead established a general remedy for wrongful death under maritime law.

<u>Id.</u> at 1088-89 (internal citation omitted). Garris has not offered, nor have we found, another federal court of appeals decision that has adopted <u>Wahlstrom</u>'s reading of <u>Moragne</u>. For the reasons stated above, we disagree with the Second Circuit's reading of <u>Moragne</u>.

**7** Garris argues that notwithstanding the limited issue before the Court in <u>Moragne</u> and its historical context, the <u>Moragne</u> Court must have intended to recognize a cause of action of wrongful death for all breaches of maritime duties because it explicitly overruled <u>The Harrisburg</u>, which held, in the context of a wrongful-death cause of action based upon negligence under general maritime law, that general maritime law did not afford recovery for wrongful death. Garris argues that "[i]f the Court meant to limit its holding to unseaworthiness, it would have merely distinguished <u>The Harrisburg</u>." (Appellant's Br. at 7.) The Court in <u>The Harrisburg</u>, however, relied explicitly upon <u>Insurance Co. v. Brame</u>, 95 U.S. 754 (1877), which held "that by the common law no civil action lies for an injury which results in death." <u>Id.</u> at 756. The Court in <u>The Harris-</u>

14

Our reading of <u>Moragne</u>, both from the Court's language and the context in which it was decided, as well as its subsequent interpretation, leads us to the inescapable conclusion that <u>Moragne</u> was, both at its heart and in its facts, an unseaworthiness case. We, therefore, agree with the district court and conclude that <u>Moragne</u> did not recognize a general maritime law cause of action for wrongful death based upon negligence.

_____

<u>burg</u> found no reason to apply a different rule in admiralty than at common law, and, therefore, concluded that there could be no civil action for wrongful death in admiralty absent a relevant statute. <u>See The Harrisburg</u>, 119 U.S. at 213-14. Thus, although the issue before the Court in <u>The Harrisburg</u> had to do only with negligence-based wrongful-death actions, its rationale was applicable to all forms of wrongful death. The <u>Moragne</u> Court, therefore, had to overrule, rather than distinguish, <u>The Harrisburg</u> in order to create a general maritime law cause of action for wrongful death based upon unseaworthiness. The <u>Moragne</u> Court's necessary step of overruling <u>The Harrisburg</u> does not suggest, as Garris argues, that it actually intended to recognize a general maritime law cause of action for wrongful death based upon negligence that was not before it on appeal.

We note that the Court in <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19 (1990), read <u>Moragne</u> as recognizing a general maritime law cause of action for wrongful death based upon unseaworthiness for seamen, as opposed to only longshoremen, partially because "<u>Moragne</u> explicitly overruled <u>The Harrisburg</u>. <u>The Harrisburg</u> involved a true seaman." <u>Id.</u> at 30 (internal citation omitted). The other basis for the <u>Miles</u> Court's reading of <u>Moragne</u>, however, was that "all three of the `anomalies' to which the <u>Moragne</u> cause of action was directed involved seamen. . . . It would be strange indeed were we to read <u>Moragne</u> as not addressing a problem that in large part motivated its result." <u>Id.</u> The Court in <u>Miles</u>, therefore, recognized a general maritime law cause of action for wrongful death based upon unseaworthiness for seamen partially because the reasoning applied equally between seamen and longshoremen. Here, however, unlike in <u>Miles</u>, the reasoning does not apply equally between unseaworthiness and negligence; the three "anomalies" in <u>Moragne</u> related specifically to a wrongful-death cause of action based upon unseaworthiness and had little relation to a wrongful-death cause of action based upon negligence.

15

III.

Having concluded that <u>Moragne v. States Marine Lines, Inc.</u>, 398
U.S. 375 (1970), did not create a general maritime law cause of action
for wrongful death based upon negligence, we must now decide
whether to extend <u>Moragne</u> to recognize such a cause of action.
Because the creation of a negligence-based wrongful-death action is
consistent with the principles of uniformity and consistency that
formed the basis of <u>Moragne</u>, and because Congress has not affirma-
tively precluded a negligence-based wrongful-death claim, we find it
appropriate to recognize a general maritime law cause of action for
wrongful death based upon negligence.

In deciding to recognize a general maritime law cause of action for
wrongful death based upon unseaworthiness, the <u>Moragne</u> Court con-
cluded that

> the work of the legislatures has made the allowance of
> recovery for wrongful death the general rule of American
> law, and its denial the exception. Where death is caused by
> the breach of a duty imposed by federal maritime law, Con-
> gress has established a policy favoring recovery in the
> absence of a legislative direction to except a particular class
> of cases.

<u>Id.</u> at 393. Applying this principle, the <u>Moragne</u> Court examined the
Jones Act and DOHSA to determine whether Congress had expressed
an intent to preclude a general maritime law cause of action for
wrongful death based upon unseaworthiness. The <u>Moragne</u> Court
rejected the argument that DOHSA's failure to account for an
unseaworthiness-based claim reflected a congressional intent to fore-
close that cause of action. The <u>Moragne</u> Court, pointing to the three
anomalies described above, noted that "[t]he resulting discrepancy
between the remedies for deaths covered by [DOHSA] and for deaths
that happen to fall within a state wrongful-death statute not encom-
passing unseaworthiness could not have been foreseen by Congress."
<u>Id.</u> at 399. The <u>Moragne</u> Court concluded that the absence of an
unseaworthiness-based wrongful-death cause of action in DOHSA did
not evidence a congressional intent to foreclose such a cause of action
because "no intention appears that [DOHSA] have the effect of fore-

16

closing any nonstatutory federal remedies that might be found appropriate to effectuate the policies of general maritime law." Id. at 400. The Moragne Court reasoned, instead, that creation of a general maritime law cause of action for wrongful death based upon unseaworthiness was consistent with the purpose of the Jones Act, which

> was intended to achieve uniformity in the exercise of admiralty jurisdiction by giving seamen a federal right to recover from their employers for negligence regardless of the location of the injury or death. That strong concern for uniformity is scarcely consistent with a conclusion that Congress intended to require the present nonuniformity in the effectuation of the duty to provide a seaworthy ship.

Id. at 401 (internal quotation marks omitted). The Moragne Court concluded that "Congress has given no affirmative indication of an intent to preclude the judicial allowance of a remedy for wrongful death to persons in the situation of this petitioner." Id. at 393.

The Moragne Court's examination of the three anomalies, the Jones Act, and DOHSA is instructive. It demonstrates an analytical framework under which the Moragne Court created a general maritime law cause of action for wrongful death based upon unseaworthiness under circumstances where: (1) Congress had not affirmatively expressed an intention to bar such a cause of action; and (2) creation of that cause of action was consistent with the policies of general maritime law articulated in the Jones Act -- uniformity in the exercise of admiralty jurisdiction.

This analytical framework likewise applies in the present case and counsels in favor of recognizing a Moragne action based upon negligence.[8] In the present case, Garris has no right of recovery under the

_____

[8] A "Moragne action" or "Moragne cause of action" is simply another term for a general maritime law cause of action for wrongful death. See Miles v. Apex Marine Corp., 498 U.S. 19, 30 (1990) (referring to a "Moragne cause of action" in deciding whether to apply a general maritime law wrongful-death action to seamen); Miller v. American President Lines, Ltd., 989 F.2d 1450, 1457 (6th Cir. 1993) (referring to a "Moragne action").

17

existing statutory scheme. Garris cannot recover under DOHSA because her son died within state territorial waters. She cannot recover under the Jones Act because her son was a harbor worker, and not a seaman. And, she apparently cannot recover against Norfolk under the Virginia wrongful-death statute because the Virginia worker's compensation statute confers broader immunity than the LHWCA; unlike the LHWCA, which bars suit only against the immediate employer,**9** the Virginia statute bars state tort claims against contractors as well as immediate employers.**10** See Va. Code Ann. §§ 65.2-302, 307 (Michie Supp. 1999); Ward v. Norfolk Shipbuilding & Drydock Corp., 770 F. Supp. 1118, 1120 (E.D. Va. 1991) ("Under the Virginia Act, a contractor such as Norshipco is the `statutory employer' of a subcontractor's or sub-subcontractor's employee, and therefore liable for compensation to such an employee. The exclusivity provision of the Virginia Act makes the contractor immune from suit for negligence, provided the subcontractors were performing the `normal work' of the contractor. The LHWCA reaches the opposite result with respect to the liability of a contractor to a subcontractor's injured employee."); cf. Garvin v. Alumax of South Carolina, 787 F.2d 910, 918 (4th Cir. 1986) ("Congress has diligently attempted to preserve state law governance of state law third party claims by recipients of LHWCA compensation. Since there is no conflict between differing rules of immunity and application of South Carolina's rule [granting immunity to contractors] will not frustrate the effectiveness of any federal law . . . the contractor[] is immune from this state tort

_____

**9** The LHWCA sets forth the exclusive remedies for a longshoreman or harbor worker's injury or death "occurring upon the navigable waters of the United States," including adjoining piers or dry docks, see 33 U.S.C.A. § 903(a) (West 1986), for injuries caused by a maritime employer, co-employee, or vessel. See 33 U.S.C.A. §§ 905, 933(i) (West 1986). The LHWCA requires the employer, inter alia, to compensate the injured longshoreman or harbor worker for certain disability costs, recovery costs, and to provide death benefits to certain beneficiaries. See 33 U.S.C.A. §§ 906-910, 914 (West 1986). It also permits the longshoreman or harbor worker to sue the employer if the employer fails to pay the prescribed benefits. See 33 U.S.C.A. § 905(a). As part of this compensation scheme, the LHWCA confers immunity to an immediate employer from tort suits by injured employees. See id.

**10** That is presumably why Garris has sued only Gresham, and not Norfolk, in state court under the Virginia wrongful-death statute.

18

claim."). In other words, because Garris's son was a harbor worker who happened to be killed in Virginia's territorial waters, Garris cannot recover against Norfolk absent a federal maritime law cause of action for wrongful death based upon negligence.

We see no reason to deny Garris a basis of recovery simply because her son was a harbor worker who died in Virginia, as opposed to another state that permits recovery against contractors. First, Congress has not affirmatively expressed an intent to preclude a negligence-based wrongful-death cause of action against a third party. As the Court noted in Moragne, DOHSA does not preclude a "nonstatutory federal remed[y] that might be found appropriate to effectuate the policies of general maritime law." Moragne, 398 U.S. at 400. And, like DOHSA, the LHWCA does not evidence a congressional intent to preclude a general maritime law cause of action against third parties for wrongful death based upon negligence.[11] Sec-

---

[11] The LHWCA generally does not address rights of recovery against third parties except in one instance: the LHWCA eliminated unseaworthiness as a cause of action against the vessel with respect to longshoremen and harbor workers and replaced that cause of action by permitting longshoremen and harbor workers to bring suit for negligence "against [the] vessel as a third party." See 33 U.S.C.A. § 905(b) (West 1986); Miles v. Apex Marine Corp., 498 U.S. 19, 28 (1990) ("If Moragne's widow brought her action today, it would be foreclosed by statute."); Garvin v. Alumax of South Carolina, 787 F.2d 910, 917 (4th Cir. 1986) ("Except with respect to claims against vessels addressed in 33 U.S.C.A. § 905(b), the LHWCA does not address the substantive rights of claimants against third parties.").

We recognize that Congress's removal of the unseaworthiness cause of action for longshoremen and harbor workers reduced their overall right of recovery. See Holland v. Sea-Land Serv., Inc., 655 F.2d 556, 558-59 (4th Cir. 1981) (stating that Congress "substantially limited the right of longshoremen to recover from third parties in tort actions" by eliminating unseaworthiness as a cause of action, but "preserve[d] his right under prior law to recover for third party negligence"). This restriction of rights, however, occurred within the limited context of unseaworthiness, and for a very specific reason: "`[t]he rationale which justifies holding the vessel absolutely liable to seamen if the vessel is unseaworthy does not apply with equal force to longshoremen and other non-seamen working on board a vessel while it is in port.'" Harwod v.

19

ond, recognition of a general maritime law cause of action for wrongful death based upon negligence "effectuate[s] the policies of general maritime law" because it is consistent with the policy of achieving uniformity in admiralty law. Id. at 400. The location of a harbor worker's death -- a fact of true happenstance-- should not determine an injured party's ability to recover for wrongful death.**12** Because

_____

Partrederei AF 15.5.81, 944 F.2d 1187, 1198 (4th Cir. 1991) (Ervin, J., dissenting) (quoting H.R. Rep. No. 92-1441, 92nd Cong., 2d Sess., reprinted in 1972 U.S. Code Cong. & Admin. News 4698, 4703). We do not believe that this limited curtailment of longshoremen and harbor workers' rights is inconsistent with our recognition of a general maritime law cause of action against third parties for wrongful death based upon negligence, nor does it express an affirmative congressional intent to preclude such a cause of action. Indeed, the LHWCA expressly leaves intact a longshoreman or harbor worker's rights against all other third parties except the employer and "persons in the same employ." See 33 U.S.C.A. § 933(i) (West 1986).

**12** Our recognition of a federal cause of action for wrongful death based upon negligence does not conflict with Garvin v. Alumax of South Carolina, 787 F.2d 910 (4th Cir. 1985), in which we held that South Carolina's worker's compensation statute conferred immunity to a contractor from an injured longshoreman's state tort action even though the injured longshoreman received benefits only under the LHWCA. See id. at 918. In Garvin, we noted that "[t]he federal immunity rule is to be applied when a third party claim is a federal claim; when the third party claim is a state law claim, the immunity rules of that state are to be applied." Id. at 917. Because Garvin dealt only with a state claim, and not a federal claim, Garvin is not inconsistent with our decision in the present case.

Nor does a negligence-based Moragne cause of action violate "important federalism principles" by impermissibly interfering with Virginia's grant of immunity to Norfolk under state law. (Appellee's Br. at 21.) First, the broader Virginia immunity rule would still apply to any state tort actions brought by Garris. To that extent, a Moragne cause of action does not interfere with state law at all. Second, although "[f]ederal maritime law has long accommodated the States' interest in regulating maritime affairs within their territorial waters . . . . Permissible state regulation . . . must be consistent with federal maritime principles and policies." Yamaha Motor Corp. v. Calhoun, 516 U.S. 199, 215 n.13 (1996). Cf. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 409-10 (1953)

20

such a cause of action is consistent with the framework set forth in Moragne, we hold that a general maritime law cause of action against third parties for wrongful death based upon negligence is available where a harbor worker, such as Garris's son, dies within state territorial waters.**13** For that reason, we reverse the district court's dismissal

_____

("While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in controlling acts of Congress or by interpretive decisions of this Court."). Accordingly, Norfolk's federalism argument does not deter us from recognizing a Moragne cause of action in this context.

**13** We recognize that the Supreme Court, in Dooley v. Korean Air Lines Co., 118 S. Ct. 1890 (1998), declined to extend general maritime law to permit recovery for pre-death pain and suffering under a general maritime law survival cause of action. See id. at 1895. In Dooley, the Court rejected the argument that DOHSA, which does not authorize recovery for pre-death pain and suffering, did not bar such damages under general maritime law because DOHSA is a wrongful-death statute rather than a survival statute. See id. The Court stated that

> DOHSA expresses Congress' judgment that there should be no such cause of action in cases of death on the high seas. By authorizing only certain surviving relatives to recover damages, and by limiting damages to the pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for deaths that occur on the high seas.

Id. at 1894-95. The Court noted that "[b]ecause Congress has already decided these issues, it has precluded the judiciary from enlarging either the class of beneficiaries or the recoverable damages." Id. at 1895. Moreover, "it cannot be contended that DOHSA has no bearing on survival actions; rather, Congress has simply chosen to adopt a more limited survival provision." Id. The Court concluded that "[e]ven in the exercise of our admiralty jurisdiction, we will not upset the balance struck by Congress by authorizing a cause of action with which Congress was certainly familiar but nonetheless declined to adopt." Id.

Unlike DOHSA, which addressed the remedy sought by the petitioners in Dooley, and, therefore, pervaded the field on that issue, the LHWCA does not address the third party cause of action that Garris seeks in the present case. In fact, as noted above, the LHWCA addresses third party rights only in the limited context of eliminating an unseaworthiness

21

of Garris's general maritime law negligence-based claim and remand for further proceedings consistent with this opinion.

IV.

In conclusion, the language of <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970), combined with its historical and legal context and the absence of persuasive authority to the contrary, leads us to conclude that <u>Moragne</u> recognized only a general maritime law cause of action for wrongful death based upon unseaworthiness and not for wrongful death based upon negligence. However, because Congress has not affirmatively precluded a negligence-based cause of action, and because such a cause of action is consistent with the principle of uniformity expressed in <u>Moragne</u> and <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19, 33 (1990) ("Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law."), we find it appropriate to recognize a general maritime law cause of action for wrongful death based upon negligence. Accordingly, we reverse the district court's dismissal of Garris's general maritime law negligence-based claim and remand for further proceedings.

<u>REVERSED AND REMANDED</u>

HALL, Senior Circuit Judge, concurring in the judgment:

Over the past three decades, Justice Harlan's opinion in <u>Moragne v. States Marine Lines, Inc.</u>, 398 U.S. 375 (1970), has come to occupy an important place within the Supreme Court's canon. Generations of law students have studied <u>Moragne</u> for its scholarly discussion of legal process and the role of precedent. But before those students reach these abstract questions, their professors have no doubt tor-

_____

action against the vessel and replacing it with a negligence action against the vessel. Thus, unlike the Court in <u>Dooley</u>, we can find no congressional intent that precludes us from recognizing a <u>Moragne</u> cause of action against third parties other than vessels for wrongful death based upon negligence.

22

mented them by asking a seemingly simple question that defies a simple answer: What, precisely, is the holding of <u>Moragne</u>?

I.

The majority, which concludes in the first instance that <u>Moragne</u>'s holding is limited to wrongful death unseaworthiness claims, gives what is in many ways a reasonable answer to that thorny question -- albeit one with which I cannot concur. And Part III of the majority opinion ultimately reaches the right result by finding a <u>Moragne</u> cause of action on the instant set of facts. The majority's explanation of why congressional silence and Appellant's lack of a state-law remedy warrant the creation of a federal admiralty remedy is particularly laudable. Because I would hold that <u>Moragne</u> already covers Appellant's claim, I find it unnecessary to reach Part III's analysis. But if I were inclined to interpret <u>Moragne</u> as narrowly as the majority does, I would certainly assent to Part III's sound discussion. Those words of explanation having been voiced, I shall explain why, in my view, <u>Moragne</u> itself created a cause of action for negligence-based wrongful death.

II.

In <u>The Harrisburg</u>, 119 U.S. 199 (1886), the Supreme Court held that general maritime law provided no cause of action for wrongful death. At the time, any successful wrongful death suit would have required the plaintiff to prove that the defendant acted negligently, and negligence was indeed the theory of liability pressed by <u>The Harrisburg</u> plaintiff and the only theory of negligence considered by the Supreme Court. <u>See id</u>. at 204.

Fifty-eight years later the Supreme Court recognized, for the first time, the doctrine of unseaworthiness. <u>See Mahnich v. Southern S.S. Co.</u>, 321 U.S. 96 (1944); <u>see also Yamaha Motor Corp. v. Calhoun</u>, 516 U.S. 199, 208 (1996) ("Prior to 1944, unseaworthiness was an obscure and relatively little used liability standard . . . .") (internal quotations marks omitted). In contrast to negligence, unseaworthiness is a strict liability theory flowing from the ship's owner to its crew, longshoreman, or harbor workers aboard the ship. <u>See Ballwanz v. Isthmian Lines</u>, 319 F.2d 457, 461 (4th Cir. 1963).

23

Twenty-six years after Mahnich, the Supreme Court decided Moragne, 398 U.S. at 375. In Moragne the plaintiff was a longshoreman's widow who brought an unseaworthiness suit against the owner of a ship on which her husband had perished. Like Appellant, the Moragne plaintiff's loved one had been killed while working aboard a vessel in navigable waters within a state's territorial waters. See id. at 376. Although no federal statute authorized recovery for the widow, the Supreme Court nevertheless allowed her suit to proceed. In order to do so, the Supreme Court said it was compelled to overrule The Harrisburg, stare decisis considerations notwithstanding. In broad language, Justice Harlan, writing for a unanimous Court, announced the rule of Moragne: "We accordingly overrule The Harrisburg, and hold that an action does lie under general maritime law for death caused by violation of maritime duties." Id. at 409.

Two aspects of the Moragne opinion are of pivotal importance in the case at bar. First, the court explicitly announced that a cause of action exists for a "violation of maritime duties," not just for "unseaworthiness." Had the Court sought to limit its holding to unseaworthiness, it could have easily done so. Second, and relatedly, had the Supreme Court sought only to allow the plaintiff to recover in her unseaworthiness-based wrongful death action, it could easily have distinguished The Harrisburg. After all, The Harrisburg held that there was no general maritime law cause of action for negligence-based wrongful death suits, but The Harrisburg said nothing about the presence or absence of a general maritime law cause of action for unseaworthiness-based wrongful death suits, since the unseaworthiness theory of liability did not enter the Supreme Court's lexicon until fifty-eight years after The Harrisburg was handed down. But the Supreme Court consciously, and with much fanfare, **1** overruled The

_____

**1** Justice Harlan's opinion in Moragne devotes seven fascinating pages to the "very weighty considerations" of stare decisis that augured against overruling The Harrisburg. See Moragne, 398 U.S. at 403-09. Anyone who reads this discussion comes away from it profoundly impressed with Justice Harlan's reverence for precedent and his reluctance to cast aside a controlling precedent in the absence of compelling reasons to do so. Indeed, scholars have long appreciated Justice Harlan's particularly hardy reverence for precedent, see, e.g., Louis R. Cohen, A Biography of the Second Justice Harlan, 91 Mich. L. Rev. 1609, 1612 (1992) (review-

24

Harrisburg instead of distinguishing it.**2** In so doing, the Court must
_____
ing Tinsley E. Yarbrough, John Marshall Harlan: Great Dissenter of the Warren Court (1992)), and deep commitment to the principle of judicial restraint, see, e.g., Stephen M. Dane, "Ordered Liberty" and Self-Restraint: The Judicial Philosophy of the Second Justice Harlan, 51 U. Cin. L. Rev. 545 (1982).

The majority today reads Moragne as having created a cause of action for unseaworthiness-based wrongful death suits, but not negligence-based wrongful death suits. Plainly, however, if the Moragne Court had favored such a distinction, Justice Harlan could have simply distinguished The Harrisburg by noting that it involved a negligence-based wrongful death cause of action, whereas Moragne involved an unseaworthiness-based wrongful death cause of action. By doing so, the Court could have avoided the unseemliness involved in overturning a well-established precedent. Two possibilities follow from the majority's holding today: Either Moragne's overruling of The Harrisburg was mere dicta or Justice Harlan and his eight colleagues lacked the capacity to distinguish a case on its facts. I find neither notion plausible. A more satisfying reading of Moragne's treatment of The Harrisburg is that the unanimous Court felt compelled to overrule The Harrisburg's holding that general maritime law did not create a negligence-based wrongful death cause of action, and that the Court saw no logical basis for holding that general maritime law recognizes unseaworthiness-based wrongful death suits, but not negligence-based wrongful death suits.

**2** The majority contends that Moragne had to overrule The Harrisburg because The Harrisburg's "rationale was applicable to all forms of wrongful death." Maj. op. at 15 n.7. In so doing, the majority emphasizes The Harrisburg's reliance on Insurance Co. v. Brame, 95 U.S. 754 (1877), which held that under the common law, "actions for injuries to the person abate by death," see id. at 759. I fail to see why Brame alters the analysis. At the time of The Harrisburg, the common law recognized no wrongful death cause of action. Among the possible theories of liability, the only candidate for a wrongful death recovery action would have been negligence because, as I noted above, the strict-liability theory of wrongful death recovery would not make its way into American admiralty jurisprudence for another fifty-eight years. It is therefore not surprising that The Harrisburg Court considered the question before it in the narrowest of terms: "Can a suit in admiralty be maintained in the courts of the United States to recover damages for the death of a human being on the high seas, or waters navigable from the sea, caused by negligence,

25

have believed that there was no principled basis for distinguishing between negligence-based wrongful death suits and unseaworthiness-based wrongful death suits under general maritime law. Yet that is precisely the distinction that the majority draws today.

In order to fully understand <u>Moragne</u>, courts have often looked to the three famous "anomalies" that <u>The Harrisburg</u> and pre-<u>Moragne</u> developments had wrought. <u>See, e.g.</u>, <u>Miller v. American President Lines</u>, 989 F.2d 1450, 1458 (6th Cir. 1993); <u>Bodden v. American Offshore, Inc.</u>, 681 F.2d 319, 323 (5th Cir. 1982). The <u>Moragne</u> Court was terribly troubled by these inconsistencies that had emerged in admiralty law, whereby a seaman might recover damages if injured within territorial waters, but not if killed within those same waters; whereby a seaman's estate could recover in an unseaworthiness action if he was killed on the high seas but not if killed within a state's territorial waters; and whereby a seaman's estate could not recover for wrongful death if he were killed within territorial waters, but a longshoreman's estate could. <u>See id</u>. at 395-96. By overruling <u>The Harrisburg</u> and removing these anomalies, the Court saw itself as assuring "uniform vindication of federal policies [by] removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts." <u>Id</u>. at 401.

The majority concludes that <u>Moragne</u>'s three anomalies are not directly implicated by the instant case. I disagree. The purpose of <u>Moragne</u> was to allow individuals who are, for all intents and purposes, equally situated, to obtain equal recoveries in the event of their deaths. In other words, happenstance should not determine whether an individual's heirs have a cause of action in the event of his untimely death. But, as the majority points out, Appellant's misfortune here is purely driven by happenstance. Maj. op. at 17-19. Had Garris been a seaman, Appellant would have had a wrongful death cause of action under the Jones Act or general maritime law. But because Garris was

_____

in the absence of an act of congress or a statute of a state giving a right of action therefor?" 119 U.S. at 204 (emphasis added). Thus, the majority's view appears to be that the <u>Moragne</u> Court read <u>The Harrisburg</u> to preclude a cause of action that had not yet been invented.

26

a longshoreman, the Jones Act is inapplicable, and Appellant is now unable to bring any suit under general maritime law. Had Garris's death resulted from the actions of the ship's owner, Appellant could have recovered under the Longshore & Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 905(b). But because his death allegedly resulted from the actions of subcontractors working aboard the ship, such a remedy is not available to Appellant. I am hardly alone in understanding Moragne's anomalies to be directly implicated by the set of facts presented in the instant case. To Grant Gilmore and Charles Black, two of their generation's towering legal minds, it "clearly follow[ed]" from Moragne that "The Moragne remedy . . . . provides recovery for deaths caused by negligence as well as for deaths caused by unseaworthiness." Grant Gilmore & Charles L. Black, Jr. The Law of Admiralty 368 (2d ed. 1974).

In 1980, a Ninth Circuit opinion cited page 368 of the Gilmore and Black treatise and largely agreed with those scholars' reading of Moragne. See Nelson v. United States, 639 F.2d 469, 473 (9th Cir. 1980). While observing that no post-Moragne published opinion had decided whether a Moragne suit "could be based on negligence as well as unseaworthiness," the court expressed sympathy for Gilmore and Black's view that the obvious implication of Moragne was that negligence suits were covered under the general maritime law. The Court held that the "need for uniformity in maritime wrongful death actions requires extension of Moragne to cover claims based on negligence, to the exclusion of state wrongful death statutes." Id. The majority reads Nelson as recognizing "that Moragne did not itself create a general maritime law cause of action for wrongful death based upon negligence." Maj. op. at 13. Although the question is admittedly close, I read no such analysis into Nelson, and believe the majority places too much emphasis on Nelson's use of the word "extension."[3] Indeed, Nelson's invocation of page 368 of Gilmore and Black suggests a contrary view.

_____

[3] When an opinion is obviously applicable to a nearly identical set of facts, it is nevertheless accurate to say that the opinion still must be "extended" to cover the second set of facts. Sometimes, a minimal extension of the prior precedent to a situation clearly controlled by that precedent even warrants the publication of a subsequent opinion. See, e.g., Boulahanis v. Board of Regents, 198 F.3d 633 (7th Cir. 1999) (extending Kelley v. Board of Trustees, 35 F.3d 265 (7th Cir. 1994), while recognizing that Kelley plainly controlled the case at bar).

27

As the majority recognizes, the Second Circuit has also held that Moragne created a negligence-based cause of action as well as an unseaworthiness-based cause of action. See Wahlstrom v. Kawasaki Heavy Indus., 4 F.3d 1084 (2d Cir. 1993). The Second Circuit correctly held that the Moragne Court "did not limit the new right of recovery to unseaworthiness claims, but instead established a general remedy for wrongful death under maritime law." Id. at 1088-89. The majority's assertion that no court has adopted Wahlstrom's reasoning is misleading. Wahlstrom is consistent with Nelson, and Wahlstrom was the last circuit court case to consider the issue that is before this Court today.

The majority seeks solace in an Eleventh Circuit case, but that reliance is somewhat misplaced. Admittedly, the Eleventh Circuit has held that Moragne does not create a negligence-based wrongful death cause of action "where a cause of action exists for wrongful death under DOHSA [the Death on the High Seas Act]." Ford v. Wooten, 681 F.2d 712, 716 (11th Cir. 1982). But it is undisputed that Appellant has no DOHSA remedy here, because Garris's injury occurred in territorial waters. In Ford, the Eleventh Circuit premised its opinion upon a balancing of interests where the interest in uniformity favored granting a remedy and "consistency with federal remedial schemes" favored withholding a remedy. The court held that "[a]t least where statutory remedies exist, we deem consistency with the federal remedial schemes to be more important than the somewhat limited loss of uniformity." Id. (emphasis added). Notably, a general maritime law cause of action would have conflicted with DOHSA because DOHSA "already provides a cause of action for death due to negligence." Id. Where, as in the case at bar, no federal statute authorizes or bars a recovery from the third party alleged to have caused Garris's death, there is nothing to balance the interest in uniformity, so Moragne creates a cause of action.**4**

_____

**4** Both parties invoke the Fifth Circuit's precedents as supporting their respective readings of Moragne. Surprisingly, both parties appear to be correct. In Ivy v. Security Barge Lines, Inc., 606 F.2d 524, 527 (5th Cir. 1979) (en banc), the Fifth Circuit held:

> Other reasons, somewhat more complex, appear to preclude interpreting the Jones Act as being supplemented by a Moragne-

28

Any lingering doubts about whether <u>Moragne</u> created a negligence-based wrongful death cause of action were laid to rest by the Supreme Court in 1996. In <u>Yamaha Motor Corp.</u>, 516 U.S. at 199, the Court held that <u>Moragne</u> did not preempt state law remedies for wrongful death resulting from injuries to nonseamen in territorial waters. But it is one of <u>Yamaha</u>'s footnotes, not its holding, that definitively resolves the instant case. Footnote 11 reads in pertinent part:

> While unseaworthiness was the doctrine immediately at stake in <u>Moragne</u>, the right of action, as stated in the Court's opinion, is "for death caused by violation of maritime

_____

> engendered negligence action for damages if (but only if) death occurs in territorial waters or on land. <u>Moragne</u> did not create or even discuss an action for negligence; it dealt only with death occasioned by unseaworthiness. The suggestion that the Jones Act measure of damages can be supplemented by the <u>Moragne</u>-cause-of-action-<u>Gaudet</u>-damages rule will not bear analysis . . . .

A decade later, the Fifth Circuit appears to have reversed course, observing that in "Moragne, the Supreme Court recognized a wrongful death action for negligence and unseaworthiness under the general maritime law." <u>Miles v. Melrose</u>, 882 F.2d 976, 985 (5th Cir. 1989), <u>aff'd sub nom.</u> <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19 (1990). Ordinarily, an en banc opinion would trump a panel opinion, but that might not be the case where, as here, the panel opinion post-dates the en banc opinion or where, as here, only the panel opinion was affirmed by the Supreme Court. The Fifth Circuit thus appears to find itself on both sides of a circuit split.

Nevertheless, the majority opinion cites <u>Ivy</u> as the current Fifth Circuit law. Maj. op. at 13. Assuming, <u>arguendo</u>, the correctness of that assessment, I would emphasize that <u>Ivy</u>'s holding is inapplicable to the case at bar. The <u>Ivy</u> court's analysis was animated by the problem of double recoveries for someone under <u>Moragne</u> and the Jones Act. Appellant, and those similarly situated, are not eligible for such a double recovery, since the Jones Act covers seamen, but not longshoremen. The Longshore & Harbor Workers' Compensation Act (LHWCA), which covers Garris, does not provided for a wrongful death cause of action against a subcontractor. Hence, there is no risk that Appellant might recover twice, unless one construes funeral benefits from an employer and wrongful death benefits from a third-party subcontractor to be a double recovery.

29

> duties." . . . <u>See</u> . . . <u>Kermarec</u>, 358 U.S., at 630, 79 S.Ct.,
> at 409-410 (negligence). <u>See also</u> G. Gilmore & C. Black,
> <u>The Law of Admiralty</u> 368 (2d ed. 1975).

<u>Id</u>. at 214 n.11. This footnote is a crucial clue for at least two reasons. First, the Court emphasized that the <u>Moragne</u> cause of action covered something in addition to unseaworthiness causes of action, and the citation to <u>Kermarec v. Compagnie Generale Transatlantique</u>, 358 U.S. 625, 630 (1959), makes it rather clear that negligence causes of action for wrongful death were part of that "something" encompassed by the broader language "violation of maritime duties." <u>See</u> Steven F. Friedell, <u>Searching for a Compass: Federal and State Law Making Authority in Admiralty</u>, 57 La. L. Rev. 825, 835 (1997) ("[T]he holding in <u>Moragne</u> was not limited to unseaworthiness. The Court held that `an action does lie under general maritime law for death caused by violation of maritime duties.' As recognized by the <u>Yamaha</u> Court, this encompasses not only unseaworthiness but also products liability and negligence.").

Second, and perhaps even more importantly, the Supreme Court cited favorably to the aforementioned page 368 of the Gilmore and Black treatise, where the authors concluded that the <u>Moragne</u> remedy "provides recovery for deaths caused by negligence as well as for deaths caused by unseaworthiness." Gilmore & Black, <u>supra</u>, at 368. This citation, combined with the text of footnote 11 and the citation to <u>Kermarec</u>, make it clear that the <u>Yamaha</u> Court understood <u>Moragne</u>'s remedy as encompassing claims like Appellant's. Although footnote 11 is dicta, it deserves special solace from this Court because it clarifies the Supreme Court's understanding of one of its own opinions. <u>See United States v. City of Hialeah</u>, 140 F.3d 968, 974 (11th Cir. 1998) ("Even though that statement by the Supreme Court in <u>Local 93</u> was dictum, it is of considerable persuasive value, especially because it interprets the Court's own precedent.").

III.

Ultimately, the agreement between my view and the majority's is far more important than our points of contention. It goes without saying that Appellant has a cause of action under either reading of

30

<u>Moragne</u>. I write separately to emphasize that in my view Appellant's cause of action is not a new ship that has suddenly appeared on the horizon. Rather, Appellant's cause of action has been lurking just under the surface for quite some time. For the foregoing reasons, I concur in the judgment.

31